### FURNALD v. GLENN.

### THIRTEEN OTHER CASES v. SAME.

(Circuit Court, S. D. New York. June 15, 1893.)

1. JUDGMENTS—EQUITABLE RELIEF—WHEN GRANTED.
   One court should not interfere with the operation of a judgment or decree of another court, because procured by fraud or collusion, if complainant still has an opportunity to obtain relief by revealing the facts to the latter court.

2. SAME—CORPORATIONS—RIGHTS OF STOCKHOLDERS—ASSESSMENTS.
   Where a court of equity, at suit of a creditor of an insolvent corporation, directs an assessment on the unpaid stock, such assessment, even though by reason of collusion in obtaining the decree it is larger than necessary to pay the debts, is no invasion of the stockholder's absolute rights, for his obligation is that of a debtor to the corporation in the full amount of his subscription.

**3.** SAME—EQUITABLE RELIEF.

In such case a different court would not entertain a suit to enjoin the collection of the subscriptions, so long as it was still within the power of the court ordering the assessment to correct its mistake by reducing the assessment, or by ordering a ratable return of any surplus remaining after payment of the debts.

In Equity. These were 14 suits to enjoin John Glenn from prosecuting actions of law against the several complainants to recover stock assessments. The complainants in the respective suits are Francis P. Furnald, Charles H. Todd, Lloyd Aspinwall, Francisco Bianchi, Grinnell Burt, Hannah Burt, Samuel Eddy, Samuel Engle, Gardiner G. Howland, William L. Pomeroy, William M. Randall, Charles F. Thorburn, William S. Williams, and Alexander J. Mayer. Bills dismissed.

Burrill, Zabriskie & Burrill, for complainants.

Burton N. Harrison, for defendant.

TOWNSEND, District Judge. These are bills in equity for injunctions against the prosecution of actions at law, brought by the defendant herein, to recover of the several complainants amounts unpaid upon stock of the National Express & Transportation Company held by them. The facts concerning the insolvency of said express company, and the proceedings which led up to the appointment of the present trustee, are fully set out in Glenn v. Marbury, 145 U. S. 499, 12 Sup. Ct. Rep. 914. As the other questions to be passed upon are raised in all the cases, they will be considered and disposed of together. What is hereafter said applies to each of the cases.

The action at law sought to be enjoined is, in part, based upon decrees of a Virginia court, adjudging the validity of a certain deed of trust, and that unpaid subscriptions passed thereunder, appointing the defendant herein trustee, and making and directing the enforcement of certain calls for payment on the stock. The ground upon which it is urged that the action at law be enjoined is that, as claimed, the decrees were procured by fraud or collusion. It is urged, also, that the Virginia court had no jurisdiction of the corporation in the suit in which the decrees were made. If it were necessary to pass upon the question as to whether said corporation had a reasonable opportunity to defend against said suit, I should find that due service of process was made upon William H. Perot, the president, and Joseph R. Anderson, a director, of said corporation, and that the stockholders were bound by the decree therein. Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. Rep. 739. But this question of jurisdiction being open to inquiry in the action at law, it seems unnecessary, and perhaps improper, to pass upon it in this suit. Thompson v. Whitman, 18 Wall. 457.

It appears to be established by the decisions of the supreme court of the United States and other authorities that one court should not interfere with the operation of a judgment or decree of another court because procured by fraud or collusion, if the complainant either still has an opportunity to obtain relief by reveal-

ing the facts to the latter court in the suit before it, or has lost such opportunity by his own neglect. In Graham .v. Railroad Co., 118 U. S. 161, 6 Sup. Ct. Rep. 1009, the supreme court approves the statement of the law made by Judge Nelson in the circuit court, (14 Fed. Rep. 753,) as follows:

"In Nougue v. Clapp, 101 U. S. 551. it was held that the circuit court of the United States cannot revise or set aside a final decree rendered by a state court which had complete jurisdiction of the parties and subject-matter upon the ground that the decree was obtained by fraud, where the injured party has had an opportunity to apply to the state court to reverse the decree. The plaintiff is, a party to the foreclosure suit as a shareholder in the old corporation. The state court is still open to listen to the complaint of the corporation and its shareholders. The decree of the foreclosure, though final in one sense. as determining the respective rights of the parties to the property. in question, is still in its nature interlocutory, and is open to review by the court, upon petition or motion in the cause, or by bill of review, for good cause shown. The plaintiff has, therefore, an ample and complete remedy for all his alleged grievances in the state court, and there is no occasion for his application to this court for relief by bill in equity."

Judge Nelson, in that part of his opinion immediately preceding the foregoing quotation, laid down the rule upon which the complainant relies, with its limitations, as follows:

"It is well settled in the courts of the United States that when a decree or judgment has been obtained against a party to a suit at law or in equity by fraud or deception practiced upon him by his opponent, and he has lost, without fault of his, his remedy of applying to the court for the revocation or reversal of the decree or judgment, a court of equity will afford him relief."

Foster v. Railroad Co., 146 U. S. 88, 13 Sup. Ct. Rep. 28; Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. Rep. 62; Kent v. Iron Co., 144 U. S. 75, 12 Sup. Ct. Rep. 650; Sanders v. Soutter, 126 N. Y. 193, 199, 27 N. E. Rep. 263; Insurance Co. v. Hodgson, 7 Cranch, 332; 1 Black, Judgm. §§ 362, 371.

If, then, the Virginia court still has the power in the suit in which the decrees were made to modify such decrees, or to give effect to them in the subsequent proceedings, so that no right of the complainant shall ultimately be violated, there would seem to be no ground for any relief in this suit. This is equally true if the court had such power for a reasonable time after the complainant had notice, actual or constructive, of said suit.

That the plaintiff in the Virginia suit was a creditor of the company in some amount, and so entitled to bring the suit, and that, if the Virginia court had been fully advised of the facts, it would and should have made some call upon the stockholders, is hardly open to doubt. Nor is there any foundation for the claim, if it is intended to be made, that the suit was wholly collusive. Any possible fraud or collusion must have related solely to the investigation of the debts of the company, thus affecting only the amount of the calls. The stockholders, if the court had been fully advised, would have been called upon to make some payment on account of their stock. It is claimed that, because of fraud or collusion, they were called upon to pay more than was necessary. This is the most that can be urged upon the evidence. It may, perhaps, be doubted whether it is still, or was at the time when

this suit was begun, in the power of the Virginia court to modify its decrees so as to change the amount of the calls upon unpaid stock. But there seems to be no doubt that that court may still revise its findings as to the debts of the corporation, so far as they bear upon the distribution of the fund received, and to be received, by the trustee. It is in its power to determine to whom this fund shall go, without regard to these findings, and in the light of all evidence as to the debts of the company which has been or may be offered to it by the complainant or any one else. It could undo a mistake, if there were any, into which it has been led by fraud or collusion as to the amount of such debts, at least so far as to fix such amount for the purposes of distribution, unaffected by such fraud or collusion, and restore any balance remaining to the stockholders in proper proportions. If, therefore, the alleged fraud be assumed to be proved, the case seems to turn upon the question whether the Virginia court in the said suit can, by so doing, ultimately protect the rights of the complainant, and prevent any wrong from resulting to him from the alleged fraud and collusion. Or, to put the question a little differently, is it an injury, a legal wrong, the violation of a right of the stockholder, to make him pay in more than is needed, and later to pay back to him the excess?

What, then, is the obligation of a stockholder with respect to unpaid stock after the corporation has become moribund? Is his obligation absolutely limited by the amount needed to pay debts? Chief Justice Waite, in Terry v. Anderson, 95 U. S. 636, says: "The liability of the stockholders upon their unpaid subscriptions is that of debtor to the bank." Ogilvie v. Insurance Co., 22 How. 380; Hatch v. Dana, 101 U. S. 205. What the stockholders thus owe is what they or their predecessors in the holding of the stock have agreed to pay; that is, the full amount of the par value of the stock, less what has been paid. If the corporation continued in control of its assets, though it has ceased to do business, may not its board of directors call the full amount? Can the stockholder, in such case, as a defense to the action thereon, object that the call is larger than the amount of the debts makes necessary? When the court acts in the stead of the directors, may it not call the full amount unpaid without violating the rights of stockholders? Foote v. Glenn, 52 Fed. Rep. 529.

Since the stockholders are entitled to what remains of the assets after debts are paid, it is, of course, a rule of procedure in courts of equity in such cases not to call in what is clearly unnecessary; but this, it seems, is not because of any absolute right of the stockholder to refuse to pay what he has agreed to pay. The court doubtless should make some summary investigation, and, if it can be satisfied that no more than a certain amount is needed, it should call only for that amount. But if it takes too superficial a view, if it is mistaken as to the facts, or in its inferences from facts, either in estimating the amount of the debts, or in surmising as to how much a call of a particular amount will actually bring in, it cannot be said that thereby it violates the rights

of the stockholders. The opinion in the case of Scovill v. Thayer, 105 U. S. 143, does not conflict with this view. There, where the corporation, so far as it could do so, had released the obligations of the stockholders, the court held that they were not bound to pay anything until the necessary amount was at least approximately ascertained. The use of the word "approximately" would seem to show that the court did not mean that the obligations of stockholders were absolutely limited in the way suggested. The decision in Hawkins v. Glenn, supra, that for the purposes of an action at law similar to that sought to be enjoined herein the decrees against the corporation bind the stockholders, seems to me to be conclusive on this point; for, if the stockholder is bound only to pay what is needed to pay debts, if to compel him to pay more is to violate his strict rights, how can it be that the amount to be paid can be determined without his presence without allowing him to offer and object to evidence, to argue, and, if error is committed, to appeal? Let a decree be entered dismissing the bill.