CENTRAL MANUFACTURING COMPANY, Respondent. v. EMMA MONTGOMERY, Executrix, Appellant.

Springfield Court of Appeals, June 6, 1910.

1. PLEADING: Conversion: Assumpsit: Objections to Petition after Trial. In a suit by a corporation for a recovery of money of the corporation wrongfully used by the principal officer and stockholder in the payment of his individual debts, the petition contained allegations of conversion, but was defective as an action for conversion. It also contained allegations for money had and received. *Held*, that the allegations of conversion could be treated as mere surplusage, and the petition was held to state a good cause of action for money had and received, where no objections were made to it until after trial.

2. ———: Objections to Petition. While the defendant has the right to object to the introduction of evidence on account of the insufficiency of the petition, and also has the right to raise an objection to the petition by motion in arrest of judgment, this practice is one which is only tolerated and, if a petition is sufficient to sustain a judgment, the objections will be overruled.

3. ACTIONS: Money Had and Received. The action for money had and received has always been one favored in the · law and the tendency is to widen its scope, and it has become axiomatic that the action lies where the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff.

4. CORPORATIONS: Misappropriation of Money by Holder of All the Corporate Stock: Right of Corporation to Recover from Stockholder. Where the money of a corporation is wrongfully used by a stockholder for the purpose of paying his individual debts, a recovery can be had by the corporation in an appropriate proceeding against the stockholder's administrator, even if at the time of the misappropriation the stockholder practically owned all the stock of the corporation.

5. ————: Property of Corporations: Position and Rights of Owner of All the Stock. The owner of all the capital stock of a corporation does not own its property or any of it, and does not himself become the corporation. While the corporation exists, he is a mere stockholder of it and nothing else.

6. ————: Duty of Directors. The directors of a corporation will not be allowed to deal with themselves and for the corporation at the same time, and, must account for all profits made by the use of the company's assets, and for moneys made by breach of trust.

7. ————: Legal Meeting of Directors or Stockholders: Due Notice Must Be Given. To constitute a legal meeting of the directors or stockholders of a corporation, all the directors or stockholders must be given due notice of the meeting.

Appeal from the St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*Frank K. Ryan* for appellant.

(1) The defendant's motion in arrest of judgment should have been sustained on the point that each count of the respondent's petition is fatally defective in not alleging that the respondent had the possession or the right to the immediate possession of the money charged to have been converted, and therefore fails to state a cause of action; the omission of such an essential alle-

gation being a defect that is not cured by verdict. Bank
v. Land Co., 152 Mo. 145; House Fur. Co. v. Wallace,
21 Mo. App. 128; Golden v. Moore, 126 Mo. App. 518;
State v. Bacon, 24 Mo. App. 403; Pier v. Heinrichoffen,
52 Mo. 333; Scott v. Robards, 67 Mo. 289; Frazer v.
Roberts, 32 Mo. 457; Jones v. Tuller, 38 Mo. 363; Clin-
ton v. Williams, 53 Mo. 141.    (2)    Appellant's motion
for a new trial should have been sustained, because as
to each count of the respondent's petition there was a
failure of proof; there being no evidence going to show
that P. H. Montgomery converted or received any of the
money mentioned in respondent's petition, and respond-
ent's evidence only tended to prove a cause of action not
set forth in such petition.   Sandeen v. Railroad, 79 Mo.
282; Timber Co. v. Railroad, 180 Mo. 420; Revised Stat-
utes 1899, sec. 798; Petit v. Bouju, 1 Mo. 64; Kreher
v. Mason, 33 Mo. App. 297; Knecht v. Savings Inst., 2
Mo. App. 563; Kenneth Co. v. Bank, 96 Mo. App. 125;
McKeen v. Bank, 74 Mo. App. 281; State v. Reed, 125
Mo. 51; Waldhier v. Railroad, 71 Mo. 518; Carson v.
Cummings, 69 Mo. 325; Moore v. Hutchinson, 69 Mo.
429.    (3)    Money had and received will not lie for that
which is taken under a claim of right.   Bank v. Rice,
161 Fed. 828; Ferguson v. Carrington, 9 B. & C. 59;
Silway v. Fogg, 5 M. & W. 83; Skeen v. Johnson, 55 Mo.
25; Finley v. Bryson, 84 Mo. 664; Sandeen v. Railroad,
79 Mo. 282.


*B. N. Simpson* for respondent.

(1) This action is in assumpsit on the common
count for money had and received by defendant to the
use of plaintiff. The petition states a cause of action
in assumpsit. Maxwell on Code Pl. 247; Richardson v.
Drug Co., 92 Mo. App. 515; Bank v. Bank, 116 Mo. 558;
Davis v. Krum, 12 Mo. App. 286; Tamm v. Kellogg, 49
Mo. 118. (2) The cause of action in assumpsit stated
in each count of respondent's petition was proved and

the referee so found.  Banking Co. v. Donovan, 195 Mo. 262; 2 Greenleaf on Ev. (16 Ed.), 118; Chitty on Contracts, 274; Jacoby v. O'Hearn, 32 Mo. App. 566.   (3) There was no valid contract and Montgomery knew it when he took the money.   2 Perry on Trusts, 821; 1 Story on Eq. Jur., sec. 468; Cook on Corp., 709; Hutchinson v. Greene, 91 Mo. 367; Hill v. Mining Co., 119 Mo. 9; Alta Co. v. American Co., 78 Cal. 367; Colorado Co. v. American Co., 97 Fed. 843; Land Co. v. Webster, 75 Mo. App. 457; 1 Thompson on Corp., sec. 458; St. Louis Co. v. Partridge, 8 Mo. App. 570.

GRAY, J.—Plaintiff commenced this action to the February term, 1906, of the St. Louis Circuit Court, by filing its petition, in three counts.   The first count charges that plaintiff is a corporation organized under the laws of Missouri, and that the defendant is the executrix of the estate of P. H. Montgomery, deceased; that on the 7th day of July, 1902, said P. H. Montgomery being then the President of the plaintiff corporation and in full and sole charge of the business affairs and accounts of said company, wrongfully appropriated to his own use the sum of five hundred dollars of the money of plaintiff; that since the aforesaid appropriation, the plaintiff herein has received no consideration, nor has repayment to said company of said five hundred dollars, or any part thereof, been made; that defendant has funds and property in her hands as such executrix, sufficient for the payment of plaintiff's claim; that payment of said claim has been demanded and payment thereof refused; that the defendant is therefore indebted to plaintiff in the sum of five hundred dollars and interest thereon from July 7, 1902.

The second count is the same as the first, except the amount alleged to have been appropriated is fifteen hundred dollars, and alleges that the appropriation was made on the 21st day of July, 1902.

The third count is the same as the first, except the date of the appropriation is given July 28, 1902.

To this petition in due time the defendant answered, admitting the relation of defendant to P. H. Montgomery, as stated in the petition to be true, and so far as the issues now are concerned the balance of the answer was a general denial. In addition to the answer to plaintiff's cause of action, the defendant filed a counterclaim, asking for a judgment for nine hundred dollars and interest on a note given by plaintiff to said P. H. Montgomery, and also alleging that the corporation was indebted to her as executrix in the sum of $52.50 on an account stated. The plaintiff replied, denying the counterclaim.

On December 4, 1906, by stipulation of the parties, John M. Holmes was appointed referee to try all the issues made by the pleadings. The referee heard the evidence and made by his report finding for the plaintiff on each of the counts in its petition, and finding for the defendant on the nine hundred dollars item in her counterclaim, and for the plaintiff on the other item of the counterclaim. To the report of the referee, defendant in due time filed her exceptions, and which were by the court overruled, and after an unsuccessful effort to obtain a new trial, and after her motion in arrest of judgment had been overruled, the defendant appealed to the St. Louis Court of Appeals, and by an order of that court, the cause is here.

The first question for consideration on this appeal is the sufficiency of the petition which defendant first assailed by motion in arrest of judgment and contends that it fails to state a cause of action, in that it does not allege that plaintiff ever had possession of the money in controversy, or the right to its possession.

If we treat the plaintiff's cause of action as one purely in conversion, then under the following authorities defendant's point is well taken: Bank v. Tiger Tail

Mill & Land Co., 152 Mo. 145, 53 S. W. 902; Golden v. Moore, 126 Mo. App. 518, 104 S. W. 481.

The respondent contends that the action is not in conversion but for money had and received. The petition contains unnecessary allegations and contains allegations generally found in both conversion and assumpsit. In one part of the petition it is charged that P. H. Montgomery appropriated to his own use the sum of five hundred dollars from the money of said corporation. And it is also charged that he was in full and sole charge of the business affairs and accounts of the company, and on account of his action, the defendant became indebted to the plaintiff in the sums of money named in the different counts, with interest thereon from the dates of the appropriation. It will be noticed that no claim for damages is made in any part of the petition, but after pleading the facts, the petition alleges that the defendant is indebted to he plaintiff for the sums of money so appropriated by her husband.

No attack was made on the sufficiency of the petition until the motion in arrest of judgment was filed. While the defendant has the right to object to the introduction of evidence on account of the insufficiency of the petition, and also has the right to raise an objection to the petition by motion in arrest of judgment, this practice is one which is only tolerated, and if a petition is sufficient to sustain a judgment, the objections will be overruled. [McKinney v. Northcutt, 114 Mo. App. 146, 89 S. W. 351; Heether v. City of Huntsville, 121 Mo. App. 495, 97 S. W. 239; Fisher v. St. Louis Transit Co., 198 Mo. 562, 95 S. W. 197.]

In this case the rule should be strictly enforced. The plaintiff's petition demanded a judgment against the defendant in the sum of twenty-five hundred dollars, and the defendant in due time filed her counterclaim asking for a judgment of over twelve hundred dollars against the plaintiff. By agreement of the parties the court appointed a referee before whom the par-

ties appeared and all the evidence was taken, report made in favor of the plaintiff on its cause of action, and in favor of the defendant on one of her counterclaims, and a judgment was rendered in favor of the party in whose favor the balance was found. After all these things had been done by agreement of the parties, the defendant challenged the sufficiency of the petition.

The petition, as one in conversion, was not fatally defective, but was subject to amendment after the motion in arrest of judgment had been filed. [Golden v. Moore, 126 Mo. App. 518, 104 S. W. 481.] The mere fact that the petition alleged that the defendant had appropriated the money to his own use, did not make the plaintiff's cause an action for conversion. [Antonelli v. Basile, 93 Mo. App. 138.] In that case Judge SMITH said: "The allegation therein that the defendant had converted the money received, to his own use, was an unnecessary and redundant allegation which was but mere surplusage. The action for money had and received can be maintained irrespective of whether it is maintainable as an action of trover and conversion. [Brinkman v. Bank, 116 Mo. 558."]

In York v. Farmers Bank, 105 Mo. App. 139, 79 S. W. 968, the court in discussing this question, used the following language: "If the defendant received the fund with notice to whom it belonged, and then refused to pay it over to those entitled thereto, it was guilty of conversion. But even if it had wrongfully converted the fund to its own use, this did not relieve it from liability in an action for money had and received. The action for money had and received can be maintained irrespective of whether it is maintainable as an action of trover and conversion."

"The action for money had and received has always been one favored in the law and the tendency is to widen its scope—it being a flexible form of action, levying tribute on equitable, as well as strictly legal doctrines; so that, it has become axiomatic that the

action lies where 'the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff.' " [Clifford Banking Company v. Donovan Com. Co., 195 Mo. l. c. 288, 94 S. W. 527.]

Under the circumstances of the attack made on the sufficiency of the petition, we are inclined to hold that it states a good cause of action for money had and received, and will consider the case on its merits.

On the 26th day of May, 1902, P. H. Montgomery, then owning a half interest in the manufacturing business of Montgomery-Thayer Mfg. Co. a co-partnership, purchased from George E. Thayer the remaining half interest in the business, and assumed all the indebtedness of the firm. At the time of this purchase, it was the intention of Montgomery to organize a corporation to conduct the business in the future. The old company was indebted to various parties for money used in its business. The amount paid by Montgomery at the time he purchased his partner's interest, was about twelve thousand dollars. Of this amount fifty-seven hundred dollars was paid in cash and two thousand dollars in a note, and the balance by assuming Thayer's half of the total liabilities of the firm. At the time of this purchase, Montgomery contemplated the formation of a corporation to take over the business, and pursuant to this plan, he did organize the plaintiff corporation with a capital stock of twenty-five thousand dollars, divided into two hundred and fifty shares of the par value of one hundred dollars each, subscribed for as follows: By him, one hundred shares; D. P. Lewis, ninety-four shares; W. L. Ganett, fifty shares; Charles E. Thayer, five shares, and W. E. Rule, one share. The directors of the new corporation were Montgomery, Ganett and Rule. The articles of incorporation were recorded June 24, 1902, and recited that the capital stock was fully paid up.

After the first day of June, orders received by the old company were filled in the name of the corporation. Montgomery wrote letters to his debtors notifying them of the change in the business, and requesting them to make payments to the new company. He stamped on his stationery over the name of the old company, the name of the new one. The expenses of the business from an early date in June were charged to and paid by the new company. By the first day of July, Montgomery had paid substantially all of the indebtedness of the old company which had been assumed by him, except four notes held by a bank in Kansas City, aggregating twenty-five hundred dollars. On July 5, 1902, without any formal notice, and before the company had been organized by the election of any officers, an alleged meeting of the stockholders of the corporation was held, at which all were present except W. A. Rule. The referee finds that a reason existed for not notifying Rule, as Rule knew from statements of Montgomery, the details of the arrangements under which the property of the old company was transferred to the new. The stockholders who attended the meeting with Montgomery knew nothing about this and did not have a dollar's interest in the corporation, as their stock had been given to them for the sole purpose of complying with the law regarding the organization of corporations. It is also a fact that Rule had paid nothing for the share of stock held by him.

At the meeting on July 5th, Montgomery was elected president and Lewis secretary of the meeting, and a motion was carried for the purchase by the new company at the price of twenty-five hundred dollars, the orders and good will of the old company. On the same day, a written order was made by the members of the old company, transferring its good will and orders to the new company. The referee found that no entry on the account book of the company was made at the time concerning this transaction, but that some-

time afterwards, and about July 22, entries were made in the journal and ledger as of July 5, showing an indebtedness to the Montgomery-Thayer Company of twenty-five hundred dollars for good will and orders.

After this apparent indebtedness on the part of the plaintiff to the old company had been created, Montgomery arranged for the payment as follows: He paid the first note of five hundred dollars, which was due to the bank from the old company, by the check of the new company. On July 21, as the executor of an estate which he was administering, he loaned to the new company twenty-five hundred dollars, taking its note of that date therefor, and depositing the proceeds in the bank to the credit of the new company. On the same day he paid the next two notes of the old company held by the bank, amounting to fifteen hundred dollars, by a check of the new company for that amount, and on July 28, he paid the remaining five hundred dollars due the old company from him with a check of the new company. The payments thus made of twenty-five hundred dollars for the notes of the old company were charged on the books of the new company against the credit of twenty-five hundred dollars for good will and orders.

The referee found that some time in July, Montgomery made an agreement to sell half of his stock amounting to one hundred and twenty-five shares, to Maltby, Rule and Sylvester. At that time he represented to them that the company had taken over the assets of the old company, had succeeded to its business, had no indebtedness save current bills for July, not exceeding two hundred dollars, and the stock was fully paid. The stock was taken and paid for by the purchasers, beginning with payments on July 22nd. On August 26, a stockholders' meeting was held, and also a directors' meeting, and the company was organized for the first time; the "dummy" directors resigning,

others being elected in their places, and officers of the corporation were elected.

The referee found that at the time of the agreement for the purchase of the stock from Montgomery, and at the date the first thereof was paid for, the purchasers knew nothing about the entry of July 5, 1902, and knew nothing about any of the transactions concerning the purchase of the good will and orders of the old company; that when Montgomery's attention was called to the transaction, he claimed that his former partner demanded twenty-five hundred dollars for the good will and orders, and that he had promised to pay that amount therefor. A demand was made upon Montgomery to repay the money to the corporation, which he declined to do, and died a few months afterwards.

The referee further found that the alleged purchase of July 5, of the good will and orders of the old company, was a mere pretense, and was part and parcel of the scheme upon the part of Montgomery to defraud the new corporation and its prospective stockholders; that at the time said meeting was held, he intended to sell to innocent purchasers one-half of the stock of the company, and which sale he shortly afterwards consummated, and that at said time the new company owned, and for some time had been in the possession, of the good will and orders of the old company.

The referee further found that the proceedings of the alleged meeting of July 5th, were wholly unauthorized; were only had for the purpose of attempting to create a fictitious debt on the part of the new company for the benefit of P. H. Montgomery, and that an effort was successfully made by Montgomery to conceal from the persons to whom he contemplated selling the stock of the company, the fact that the four notes of the Montgomery-Thayer Co., above mentioned, aggregating twenty-five hundred dollars, were the individual debts of Montgomery, and that he paid them without authority out of the assets of the plaintiff.

We have carefully examined the report of the referee, and find that it is supported by all the evidence.

The appellant insists that the action cannot be maintained for money had and received, because such an action will not lie for that which is taken under a claim of right. If we accept the correctness of the abstract proposition of law, it cannot be said under the evidence in this case, that the money was taken under a claim of right. At the time of the alleged meeting at which the indebtedness was created, the new company was then the owner of and in full possession of all the assets attempted to be purchased at that meeting. In addition thereto, the referee finds that the meeing was called and held for the purpose and intention of creating a fictitious indebtedness.

It is next claimed that in as much as the referee finds that "Montgomery appropriated to his own use twenty-five hundred dollars of the assets of the Central Mfg. Co." and the petition alleges that he "appropriated money of the corporation," the judgment cannot be upheld. We fail to see the force of this contention. It is shown clearly by the evidence and report of the referee that Montgomery owed the Bank of Commerce twenty-five hundred dollars; that in order to pay the same he called a fraudulent meeting of the corporation, and created a fictitious indebtedness of the corporation to purchase its own assets, and used the money provided for that purpose to take up his own individual debts, so whether we call it "money" or "assets" it means one and the same thing.

The greater portion of appellant's brief is consumed in discussing the question of failure of proof, and it is claimed there is no evidence in the case going to show that Montgomery took the money of the corporation, or that he ever received any money of the corporation and appropriated it to his own use, but claims that the bank got the twenty-five hundred dollars alleged by plaintiff to have been converted, and the same

was drawn out on checks payable to the cashier of the bank.

The appellant says: "There was merely a charge of the indebtedness of. the bank to the corporation which benefited Montgomery, provided, that he got back the twenty-five hundred dollars loaned by him as executor, to the corporation." Again, we fail to see the force of the argument. If Montgomery as executor, loaned the corporation twenty-five hundred dollars, the corporation should have had the money to use for its own benefit, but instead thereof, Montgomery took the money, put it in the bank and then drew checks of the corporation on the fund to pay his own individual debts.

It is further claimed that at the time of the meeting on July 5, 1902, Montgomery was the owner of all the stock of the new corporation, and therefore, had the right to use the assets as he saw fit. As a general proposition, this statement of the law is correct. [Jorndt v. Hub & Spoke Co., 112 Mo. App. 341, 87 S. W. 29.] But at the time one share of stock in the corporation was held by Mr. Rule, who was also a director of the corporation, if it was intended to use the assets of the corporation for the purpose of paying the individual debts of Mr. Montgomery, Mr. Rule should have been notified of the meeting and the purposes thereof.

There is another reason why the general rule should not be applied in this case. At the time the meeting was held, the referee finds that Montgomery was contemplating selling a portion of his stock, and that the meeting was held for the purpose of creating the ficticious indebtedness, and. that the result of the meeting and the nature of the indebtednss was intentionally kept from the prospective purchasers, and that at the time of the ·purchase Montgomery represented that the company only owed two hundred dollars for current bills, and that after the defendant sold the stock

and received money, therefor, he used the money sued for herein in the payment of his individual debts.

After the corporation had been organized, it was a separate and distinct person from Montgomery, and notwithstanding he was the owner of the stock, he was not the corporation. As said by the Supreme Court of Wisconsin, in Button v. Hoffman, 20 N. W. l. c. 668: "These general principles sufficiently establish the doctrine that the owner of all the capital stock of a corporation does not, therefore, own its property, or any of it, and does not himself become the corporation. While the corporation exists he is a mere stockholder of it, and nothing else. The consequences of a violation of these principles would be that the stockholders would be the private and joint owners of the corporate property, and they could assume the powers of the corporation, and supersede its functions in its use and disposition for their own benefit without personal liability, and thus destroy the corporation, terminate its business, and defraud its creditors."

The directors of corporations will not be allowed to deal with themselves and for the corporation at the same time, and must account for all profits made by the use of the company's assets, and for moneys made by breach of trust. [Ward v. Davidson, 89 Mo. 445, 1 S. W. 846; Keokuk Packet Co. v. Davidson, 95 Mo. 467, 8 S. W. 545.]

If we treat the meeting of July 5th as a stockholders' meeting of a directors' meeting, no notice was given to Rule, who was a stockholder and director, and therefore the meeting was not a legal meeting of either the directors or stockholders. [Hill v. Rich Hill Coal Mining Co., 119 Mo. 9, 24 S. W. 223.]

The premises considered, we are of the opinion that the case was properly tried, and that the judgment is for the right party and accordingly the same is affirmed. All concur.