## BROOKLINE CANNING & PACKING COMPANY, Respondent, v. J. B. EVANS, Appellant.

**Springfield Court of Appeals, April 1, 1912. Motion for Reahearing Overruled, May 8, 1912.**

1. **JUSTICES' COURTS: Sufficiency of Statement: Corporations: Action for Unpaid Stock Subscriptions.** In a suit instituted before a justice of the peace by a corporation to recover from the defendant the amount claimed to be due on an unpaid stock subscription, the statement is examined and *held* to meet the requirements of the practice regarding statements filed before a justice of the peace.

2. **CORPORATIONS: Action for Unpaid Stock Subscription: Action at Law: Justices' Courts.** The right of a corporation to sue a stockholder for the amount due on his subscription for its stock is purely a legal one. The statute plainly provides that a corporation may sue in the courts of law of this state for unpaid subscriptions and collect the same in the same manner and form as a corporation might sue and recover a debt owing to it by any third person. Such actions may be brought before a justice of the peace when within the juris-diction of the justice as to the amount sued for.

3. ———: ———: **Bankruptcy: Insolvency: Failure to Con-tinue Business.** In an action by a corporation to recover from the defendant the amount claimed to be due on an unpaid stock subscription, it was *held* that the corporation's right to main-tain the suit was not affected by the fact that it had been ad-judged a bankrupt, its property sold to pay its creditors and it had ceased to do business and had held no meetings for more than a year after it had been released from the bankruptcy proceedings.

Canning & Packing Co. v. Evans.

4. ————: ————: **Discontinuing Business.** The adoption by a corporation of a resolution to discontinue business does not operate as a dissolution in such a way as to deprive the corporation of the power to enforce assessments upon stock by actions against its stockholders.

5. ————: ————: **Distinction Between Rights of Creditor and Corporation.** The rule governing the right of a corporation to sue and manage its business is different where the creditor is attempting to enforce a corporate liability against stockholders and where the corporation itself is attempting to collect its own assets.

6. ————: ————: **Cannot Question Purpose for Which Money is Collected.** Where the board of directors of a corporation is clothed with authority to maintain a suit for unpaid subscriptions the stockholders cannot in an action at law question the purposes for which the money is collected and such action can be maintained even if the money recovered is to be distributed among all the stockholders.

7. ————: ————: ————: **Where Part of Money is to be Returned.** In a suit by a corporation for unpaid subscription on stock where it appeared that the money recovered was to be used for the purpose of winding up the affairs of the corporation and making distributions among the stockholders, it is *held* that the stockholder cannot defend against the collection of the full amount on the grounds that when collected a part of the amount recovered would be returned to him.

8. ————: ————: **Assessment and Call by Board of Directors.** Where unpaid subscriptions on stock in a corporation are only payable on call or assessment, no action can be maintained therefor until a call has been duly made by the board of directors at a valid meeting.

9. ————: **Notice: Meeting of Directors: Presumption as to Validity of Meeting.** It is a presumption of law that proper and valid notice of a corporate meeting was duly given and that the meeting itself was regular and lawfully held and the burden of proof to show invalidity is upon him who alleges want of or insufficiency of notice or otherwise attacks the regularity or validity of the proceedings.

10. ————: ————: **Holding Stock as Security: Question of Fact: Appeal and Error.** In an action by a corporation to recover the amount due on an unpaid stock subscription, where the defendant contended that he held the stock as collateral security only, the evidence is examined and *held* sufficient to justify the finding that the defendant was the owner of the stock and such finding on the issue of fact is binding upon the appellate court.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*Henry C. Young* for appellant.

(1) Justices of the peace are denied by the statute law of this state jurisdiction of any strictly equitable proceeding. R. S. 1909, sec. 7397; Newberger v. Friede, 23 Mo. App. 636. (2) This being a proceeding, instituted for the sole purpose of enforcing contribution between the stockholders of an insolvent corporation, is strictly equitable in its nature and maintainable only in a court having chancery jurisdiction. This is true for the following reasons: First, in the absence of express statutory authority no action at law can be had or maintained to enforce the contingent liability of a stockholder for unpaid stock held by him in an insolvent corporation. 10 Cyc. 655. Second, no action at law is conferred by statute upon a stockholder who voluntarily pays his full liability to the company for recovery of the pro rata excess paid by him over the amount actually due, from his fellow shareholders, who may be delinquent. Such actions exist only in favor of creditors. Jerman v. Benton, 79 Mo. 163; Powder Co. v. Lead Co., 134 Mo. App. 187; Bank v. Bank, 130 Mo. 164. (3) Involving as it does the equitable remedies of contribution, marshaling of assets, accounting, discovery, administration of a trust fund, the avoidance of a multiplicity of actions at law, and the inadequacy of legal remedy, the procedure to enforce contribution *inter sese* between stockholders of an insolvent corporation for unpaid subscriptions is essentially and basically one over which courts of chancery have exclusive jurisdiction. Merrill v. Prescot, 74 Pac. (Kas.) 260; Thompson on Liability of Shareholders, sec. 258; Shickle v. Watts, 94 Mo. 410; Perry v. Turner, 55 Mo. 427; Beyer v.

Trust Co., 63 Mo. App. 521; Erskine v. Loewenstein, 82 Mo. 301; Ford v. Railroad, 52 Mo. App. 452; Powder Co. v. Lead Co., 134 Mo. App. 187; R. S. 1909, secs. 3364, 3365. (4) The corporation having been dissolved for the purposes contemplated by the provisions of sections 2995, 3004 and 3006, by its insolvency and bankruptcy the right to sue for its assets at law if any such right exists at all was vested in its president and directors as trustees. The right of the corporation itself to sue had become extinct. Lewisohn v. Stoddard, 63 Atl. (Conn.) 621; Ford v. Railroad, 52 Mo. App. 452; Association v. Kellog, 52 Mo. 583. (5) Since a valid call is a condition precedent to the stockholders' liability, plaintiff cannot therefore recover. Bank v. Bank, 107 Mo. 133. (6) The defendant was not liable under the facts of this case as a stockholder. He held his stock under the terms of a contract whereby he was bound to account for its proceeds and deliver it over to the real owner whenever tender was made of the amount for which it was taken as security. R. S. 1909, sec. 3351; Colonial v. McMillan, 188 Mo. 547.

*J. J. Gideon, G. D. Kirby* and *J. C. West* for respondent.

(1) The right of the corporation to sue any stockholder, by suit at law for any arrears, debts or demands due by said stockholder to said corporation is plainly declared by sections 3003, R. S. 1909, which was section 984, R. S. 1899. (2) If the stockholder is indebted to the corporation on his stock, then the necessity or purpose for the call or suit by the corporation is not to be questioned by such stockholder when sued. If he owes the corporation the purpose of such corporation in enforcing payment is no concern of his. It is so held in case of Chouteau Ins. Co. v. Floyd, 74 Mo. 286; Cook on Corporations (5 Ed.), sec. 113. In this case it is also held that the stock-

holder cannot defeat an assessment by showing that the directors have compromised and paid all the debts of the corporation with their own money. (3) The liability of the stockholders is several and not joint and each stockholder must be sued separately and the stockholder thus sued must resort to his remedy in equity for contribution. Perry v. Turner, 55 Mo. 418. (4) It need not be proved that the corporation needed the money. The call is presumed to have been regularly made. Bank v. Company, 189 U. S. 221. (5) The cessation of business on the part of a corporation does not imply a dissolution of the corporation nor deprive it of its right to bring suit. Bank v. Robidouz, 57 Mo. 446; Hotel Co. v. Saner, 65 Mo. 279. (6) The insolvency of a corporation and the discontinuance of the business for which it was organized does not deprive it of the power of collection and enforcing in its own name claims due it. Mining & Milling Co. v. Coquard, 40 Mo. App. 40. (7) Nor does the fact that the plaintiff had been adjudged a bankrupt deprive it of the power to sue. Any creditor might after such bankruptcy have sued the stockholders by virtue of the statute. R. S. 1909, secs. 2995, 3004, 3006, but these sections are designed to empower the officers as trustees to sue the creditors in the name of the corporation. To sue in their own names does not render a judgment obtained by the corporation in a suit in its name invalid. That this is the only purpose these sections of the statute (3004 and 3006, R. S. 1909), clearly established. Bank v. Pulitzer, 11 Mo. 279; Hotel Co. v. Saner, 65 Mo. 279. (8) The appellant having taken the stock with notice that it was not paid for became liable to the corporation for the amount due. Shields v. Hobart, 172 Mo. 491; Berry v. Rood, 168 Mo. 316.

GRAY, J.—This suit was instituted before a justice of the peace in Greene county, by the respond-

ent corporation, to recover from the defendant the amount claimed to be due on an unpaid stock subscription. The cause was appealed to the circuit court, wherein the plaintiff obtained a judgment and the defendant's appeal was allowed to the Supreme Court on the theory that a constitutional question was involved. The Supreme Court held that no such question was involved, and transferred the case to this court.

The cause was tried before the court without a jury, and a special finding of facts made and filed, and as the facts are practically undisputed they may be abstracted as follows: The plaintiff is a corporation organized under the laws of this state under our statutes relating to manufacturing and business companies. At the time of its organization, only one-half of the stock subscriptions were paid, and the articles so recited. The corporation engaged in business, but was not successful, and in January, 1904, a petition was filed to have it adjudged a bankrupt. The tangible property of the corporation was sold under the administration in bankruptcy, and in addition thereto the trustee called upon each of the delinquent stockholders to pay a certain per cent on their shares. Several of them responded and made the payments called for, but others failed or refused. From a sale of the property, together with the amount received from the stockholders, a sufficient sum was obtained to pay all the debts of the corporation, including the expenses in the bankruptcy proceeding, and to leave a small balance which was subsequently paid to the corporation. After the bankruptcy proceeding, the corporation did not resume business, and made no effort to do so. It seems that meetings of the stockholders and directors were no longer held, and nothing was done until sometime in April, 1906, at which time a stockholders' meeting was held for the purpose of taking steps to collect from the delinquent stock-

holders the amount of their indebtedness to the corporation with a view that when the same had all been collected, to distribute the same among the stockholders as assets of the corporation, and to dissolve the latter.

The defendant was not one of the original subscribers to the stock, but acquired his from persons who had subscribed for the same, and with knowledge that only one-half had been paid.

It is appellant's first contention that the statement filed before the justice of the peace does not state facts sufficient to constitute a cause of action. The petition recites the organization and existence of the plaintiff as a corporation; that the defendant purchased from the original owners and subscribers to the capital stock $400 face value of the stock; that at the time of the purchase of the stock there was unpaid on the same fifty per cent of the face value, and defendant well knew that fact at the time of his purchase; that since the purchase by defendant, he has paid one-half of the amount due and leaving a balance of $100 unpaid; that defendant is the owner of the stock and the board of directors has, by resolution duly made, called for the unpaid portion, and the same is now due and defendant has been notified, but has failed and refused to pay the same or any part thereof.

The petition meets the requirements of the practice regarding statements filed before a justice of the peace.

The next contention is that the suit is in equity, and the justice of the peace had no jurisdiction. In the opinion of the Supreme Court transferring the cause, we find the following relating to this point: "Appellant is mistaken in the character of the suit, it is simply an action at law, was tried as such and judgment rendered as such. Even if appellant is right in his contention that under the circumstances disclosed by the evidence he is accountable only in a suit

in equity (as to which we express no opinion), that would not convert this into a suit in equity, it would only go to show that the plaintiff should not recover in this action; if appellant is correct the judgment is erroneous.    The justice had jurisdiction of the case stated in the petition and the testimony on the part of the plaintiff was sufficient, if credited and not overcome, to justify a judgment responsive to the cause of action stated in petition.''

We do not see how the Supreme Court could have arrived at any other conclusion.   The right of a corporation to sue a stockholder for the amount due on his subscription to its stock, is purely a legal one. Section  3003,  Revised  Statutes  1909,  reads:  ''All bodies corporate, by any suit at law in any court in this state, may sue for, recover and receive from their respective members all arrears or other debts, dues and other demands which now are or hereafter may be owing to them, in like mode, manner and form as they might sue for, recover and receive the same from any person who might not be one of their body, any law, usage or custom to the contrary thereof notwithstanding.''    This statute plainly provides that the corporation may sue in the courts of law of this state, for unpaid stock subscriptions and collect the same in the same manner and form as the corporation might sue  and  recover  a  debt  owing  to  it  by  any third person.

It is next claimed by the appellant that in as much as the corporation had been adjudged a bankrupt and its property sold to pay its creditors, and in as much as it had ceased to do business and had held no meetings for more than a year after it had been released from the bankruptcy proceeding, it was to all intents and purposes a dissolved corporation, and had no right to maintain a suit against a delinquent stockholder.   The section of the statute just quoted expressly authorizes the corporation to sue a member

for his unpaid subscription in the same manner that it could sue any third person for a debt. Suppose the plaintiff had instituted this suit against a stranger to recover a debt which such third person owed to the corporation, could it be sucessfully contended that the corporation had no right to maintain the suit?

Chief Justice Waite, in Terry v. Anderson, 95 U. S. 636, says: "The liability of the stockholders upon their unpaid subscriptions is that of debtor to the bank."

In Elliott v. Sullivan, 156 Mo. App. 496, 137 S. W. 287, the plaintiff sued certain individuals as partners. The defense was that the cause of action was against a corporation of which the defendants were members. The evidence disclosed that in 1899 a mining corporation was organized under the laws of this state. The company operated for about two years and expended its capital and quit active business. One of the stockholders purchased all the stock from the other members. The matters remained in this situation for several years, when the stockholder who had purchased the stock transferred some of the shares to others, and the corporation again resumed business and purchased goods from the plaintiff. The plaintiff proceeded on the theory that the corporation became dissolved when it had expended its capital and ceased to do business, and held no meetings for several years. This court held against the plaintiff, and in the course of the opinion said: "Is an ordinary business corporation, organized under the laws of this state, dissolved, so that it cannot be reorganized because it has ceased to do business, to own property, and all of its stock has been acquired by one person? The following authorities in this state are to the contrary: Hill v. Fogg, 41 Mo. 563; Kansas City Hotel Co. v. Sauer, 65 Mo. 279; Staunton Copper Mining Co. v. Thurmond, 7 Mo. App. 587; Ready v. Smith, 170 Mo. 163, 70 S. W. 484; Oxley Stave Co. v. Butler Co., 121 Mo. 614,

26 S. W. 367; Bank v. Robidoux, 57 Mo. 446; Youree v. Ins. Co., 180 Mo. 153, 79 S. W. 175; Mfg. Co. v. Montgomery, 144 Mo. App. 494, 129 S. W. 460. And so is the weight of authority. [Bethel Hotel Co. v. Webster, 31 L. R. A. 706; Button v. Hoffman, 61 Wis. 20, 20 N. W. 667; Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261; Buell v. Buckingham & Co., 16 Ia. 284; Louisville Banking Co. v. Eisenmen, 94 Ky. 83, 19 L. R. A. 684, and authorities therein cited; 10 Cyc. 1276-8; Cook on Stockholders, 631.

"The law is well summed up in Cook on Stock and Stockholders, supra, as follows: 'There are certain acts and facts which do not in themselves constitute a dissolution. A dissolution is not effected by a failure to elect officers; nor by a sale or assignment of all the corporate property; nor by the fact that one person owns all the shares of stock; nor by a cessation of all corporate business and acts; nor by the death of its stockholders; nor by insolvency; nor, in all cases, by a consolidation with another corporation under statutory authority. For certain purposes, however, such as rendering stockholders liable on their statutory liability, or relieving directors from a penal liability, dissolution is held to arise by some of these acts.'

"Our statutes provide how and under what circumstances a corporation may be dissolved. It is there provided when the directors or a majority of the stockholders shall discover that the stock, property and effects of the corporation have been so far reduced by loss or otherwise, that it will not be able to pay just demands, an application may be made to the court, and upon hearing, a judgment of dissolution may be rendered.

"From these statutory provisions, it is apparent that the failure of the company to have property to meet its demands, does not of itself dissolve the cor-

poration, but it is only grounds for dissolution which afford the court the right to act in the matter."

In the Elliott case we cited and reviewed Bank v. Kellogg, 52 Mo. 583, Moore v. Whitcomb, 48 Mo. 543, and Bank v. Gallaher, 43 Mo. App. 490, and held that those cases were only authority for the proposition that the creditor of an insolvent defunct corporation does not have to wait until the charter expired by limitation, or until the corporation had been judicially dissolved, but as to him the corporation would be deemed dissolved when it was adjudged a bankrupt, or when it ceased to do business, or to make any effort to transact the business for which it was organized.

In the first case of Bank v. Kellogg, the court expressly recognized this rule, but said: "It may be admitted that the old and well established principle of law remains good as a general rule, that a corporation is not to be deemed dissolved by reason of any misuser or non-user of its franchise, until default has been judicially ascertained and declared."

In Ready v. Smith, supra, it is said: "The contention that the university company was dissolved and that therefore an action at law could not have been maintained against it, we think, is untenable. Nothing appears on the face of the bill to show such a dissolution beyond the allegation that the company had proved to be a failure and was insolvent. It was ruled in Oxley Stave Co. v. Butler county, 121 Mo. 641, after a careful consideration of the authorities, that the mere insolvency of the company and its inability to carry out the purposes of its incorporation would not *ipso facto* work a dissolution."

In Youree v. Ins. Co., supra, it is expressly held that the cessation of a corporation to do active business does not imply a dissolution so as to deprive it of its right to maintain an action. It is also held in the same case that the failure to elect officers does not

dissolve the corporation, but the old officers hold over until their successors are chosen or selected.

The reason assigned by the courts for permitting the creditor to maintain the action before the corporation has been formerly dissolved, is, that the creditor has no control over the process or remedy to dissolve the corporation, either for non-user or for any other cause, and if he is compelled to wait until the charter has expired by limitation, or until the law officer of the state shall see fit to institute proceedings to dissolve it, he might be wholly remediless.

After discussing the rights and powers of corporations after dissolution, appears the following on pages 1318 and 1319 of the 10th volume of Cyc: "This doctrine is not applicable to those *de facto* dissolutions which have been frequently declared to exist for the purpose of letting in the rights of creditors against shareholders. Thus the nonuser by the corporation of its franchises such as evidenced by the cessation of active business does not impair its capacity to prosecute suits. The foregoing principles have no application to a dissolution by the mere nonuser of the franchises of the corporation; for although such nonuser might be a ground upon which the state could vacate the franchises of the corporation, yet this result cannot be accomplished by private individuals in a collateral way, by way of defense to an action brought by the corporation. The very fact of bringing the action is a revivor of the corporation, if dormant, and a user of the franchises if they have fallen into a state of non-user."

It is expressly held that the adoption by a corporation of a resolution to discontinue business, does not operate as a dissolution in such a sense as to deprive the corporation of the power to enforce assessments upon stock by actions against the stockholders. [Thompson's Commentaries, section 1712.]

Since writing the above, our attention has been called to the case of Warren v. Mayer, 143 S. W. 861, recently decided by the St. Louis Court of Appeals. In that case a creditor of an insolvent corporation was attempting to hold stockholders to whom had been delivered assets belonging to the corporation. As we have heretofore stated, the rule governing the rights of the corporation to sue and manage its business, is different where the creditor is attempting to enforce a corporate liability against stockholders, and where the corporation itself, is attempting to collect its own assets.

We do not consider the case of Warren v. Mayer as being in conflict with anything said herein, or with the decision of this court in Elliott v. Sullivan, supra. And the St. Louis Court of Appeals must have taken the same view, as that court did not mention or refer to Elliott v. Sullivan or similar cases in this state.

The appellant further contends, as the corporation did not intend to use the money collected from the defendant for the purpose of paying debts or again in engaging in business, but for the purpose of winding up its affairs and making distribution among stockholders, the action cannot be maintained.

The rule is quite well settled that where the board of directors is clothed with authority to maintain a suit for unpaid subscriptions, the stockholder cannot, in an action at law, question the purposes for which the money is collected. [Thompson's Commentaries, section 1710; Chouteau Ins. Co. v. Floyd, 74 Mo. 286; Budd v. Multonomah Street R. Co., 15 Pac. 659, 3 Am. St. Rep. 169; Judah v. Amer. Livestock Assn., 4 Ind. 333; Car Trust Investment Co. v. Trust Co., 184 Fed. 443.]

Thompson in the section just cited, says: "Assuming that the directors are vested with the discretionary power of making assessments, and that the exercise of the power by them is not specially re-

strained, the wisdom or necessity of making them is exclusively for their determination, and is not open to question by the stockholders in the judicial courts, in the absence of fraud."

In Chouteau Ins. Co. v. Floyd, 74 Mo. l. c. 290, our Supreme Court adopted the rule declared by Thompson, and said: "First, as to the necessity for the assessment. This was a matter for the determination of the board of directors."

It has been repeatedly held that where the corporation has become insolvent, the directors may assess the shareholders on their unpaid subscriptions for the purpose of raising funds to liquidate the company's indebtedness, and to enable the officers to wind up the affairs of the corporation, and that such suit may be maintained in the name of the corporation. [Union Savings Bank v. Rinaldo, 92 Pac. 872; Bank v. Dunlap, 67 Pac. 1084; Savings Bank v. Willard, 88 Pac. 1098.]

In Bank v. Dunlap, supra, the court said: "The assets belong to the corporation, and though not a going concern for all purposes, it is a going concern for purposes of liquidation. The cause of action for unpaid subscriptions accrues to the corporation, and the action is properly brought in its name."

The appellant says that the plaintiff has no right to collect the full amount of defendant's unpaid subscription, as a part of it, when collected, must be returned to him. The answer to this is, that the stockholder cannot urge this as a defense to this action.

In Furnald v. Glenn, 56 Fed. 372, the court said: "What, then, is the obligation of a stockholder with respect to unpaid stock after the corporation has become moribund? Is his obligation absolutely limited by the amount needed to pay debts? What the stockholders thus owe is what they or their predecessors in the holding of the stock have agreed to pay; that is, the full amount of the par value of the stock, less what

has been paid. If the corporation continued in control of its assets, though it has ceased to do business, may not its board of directors call the full amount? Can the stockholder, in such case, as a defense to the action thereon, object that the call is larger than the amount of the debts make necessary?''

The next contention is that no legal call was made for the unpaid subscription. Section 2980, Revised Statutes 1909, reads: ''The board of directors . . . may require the subscribers to the capital stock of the company to pay the amount by them respectfully subscribed, in such manner and in such installments as may be required by the by-laws.'' The by-laws of the plaintiff read: ''A majority of the directors shall have the power to levy an assessment not to exceed the amount of stock subscribed for, to meet any liabilities incurred.''

The record contains what purports to be the minutes of a meeting of the board of directors, on May 12, 1906, and it is there stated: ''The Directors of the Brookline Canning & Packing Company, after being legally notified by mail, that there was to be a meeting, met and was called to order by the vice-president.'' The corporation had seven directors, and the minutes show that six were present at this meeting. The by-laws, after providing for the regular meetings of the board, reads: ''The directors may also meet as often as they deem it necessary to promote the interest of the company.''

On May 8th a stockholders' meeting was held, and a motion prevailed to collect from the stockholders all unpaid assessments. At the meeting of the directors on May 12th, a motion was made and carried that an attorney be employed to collect unpaid subscriptions from all stockholders. Appellant's objection to the legality of the call is in the following language: ''The meeting of April 20th was not convened by the presi-

dent and the minutes contain no intimation as to the object for which it was called or that it was ever legally called.'' The by-laws provide for a vice-president and he was authorized to perform all functions of the president in the latter's absence.

The law is quite well settled that where unpaid subscriptions are only payable on call or assessment, no action can be maintained therefor until a call has been made. [Washington Savings Bank v. Bank, 107 Mo. 133, 17 S. W. 644; Hannah v. Bank, 67 Mo. 678; Eppright v. Nickerson, 78 Mo. 482.] It is quite as well settled that a board of directors can only make a call at a valid meeting. [Cheney v. Canfield, 111 Pac. 92.]

The minutes recite that the board of directors had been legally notified and convened pursuant thereto. No evidence was offered to contradict this recital, and it is a presumption of law that proper and valid notice of a corporate meeting was duly given, and that the meeting itself was regularly and lawfully held, and the burden of proof is upon him who alleges want or insufficiency of notice or otherwise attacks the regularity or validity of the proceedings. [Cook on Stock and Stockholders (2 Ed.), sec. 600, and authorities there cited; Wells v. Rogers, 27 N. W. 671.]

The appellant's last contention is that he is not liable for the unpaid subscription, as he was only holding the stock as collateral security. The respondent offered testimony tending to prove that appellant, previous to the suit, had said that he had purchased the stock from the original subscribers, and also that appellant had paid a part of the unpaid subscription. The evidence on the part of respondent, further disclosed that appellant had taken the stock which had been assigned to him, and surrendered it, and had new stock issued in his own name. It thus appears that the respondent offered testimony, which, if believed,

was sufficient to make the question an issue of fact, and as the special finding of facts show that the court found against the appellant on this issue, it is conclusive on us.

The judgment will be affirmed. All concur.