Hill et al. v. Fogg et al.

———◄•●•►———

JAMES HILL, SR., and JAMES W. HILL, Appellants, v. JOSIAH FOGG and JAMES T. FOSTER, Respondents.

1. *Corporations—Dissolution—Assets—Equity.*—When a corporation is dissolved, a court of equity will lay hold of the assets for the purpose of applying them to the payment of creditors, as against others than *bona fide* creditors and purchasers.

2. *Corporations—Dissolution—Trust.*—A sale by a corporation of its property, in good faith and for a valuable consideration, does not amount to a dissolution of the corporation, nor make the property sold subject to a trust for the benefit of creditors in the hands of such purchaser.

*Appeal from St. Louis Circuit Court.*

This was a bill in equity brought against defendants to enforce a payment by them of a judgment obtained by plaintiffs (appellants) against a corporation called "The Copper Creek Mining and Mineral Company."

At the trial, the plaintiffs called as a witness one of the defendants, Josiah Fogg, who testified as follows: "I became a stockholder in the Copper Creek Mining and Mineral Company on the 9th of December, 1862. The capital stock at the time was $50,000. On the day that I became a stockholder, Jas. E. Blythe, H. M. Thompson, Jas. T. Foster, and

myself, were chosen directors, and we owned all of the stock of the company, each having one quarter. I have not disposed of my interest in the company. I do not know that the company ever had any property. It held itself out to the world as a company. The debt on which this suit is based was contracted, as I am informed, in behalf of the company and for its benefit. Debts were contracted in the company's name, and business was transacted in the same name. Mr. Foster acted as the company's agent. There was a piece of property at Frederickstown deeded to me in trust for the stockholders of the company. This is the deed. This is a deed of warranty from James T. Foster and wife as parties of the first part, and Josiah Fogg, trustee, being appointed for the purpose of holding this property in trust for the use and benefit of the stockholders of the Copper Creek Mining and Mineral Company, of the city and county of St. Louis and State of Missouri, party of the second part—the property being described in the deed, which was dated December 10, 1862."

The witness further stated: "The sum of $40,000, mentioned in the deed of trust, was the nominal consideration. The property was bought subject to deeds of trust amounting to about $10,500; $2,500 was payable to one Hall, and $8,000 was due to Brown, Burgess, and Selden. Foster was to have a one fourth interest in the company and its stock, and *his was considered as paid up stock.* Blythe, Thompson and I endorsed the notes secured by the deeds of trust encumbering the property—and the property was to be held to protect us against these notes; this was the understanding between us at the time. The land cost us about $16,000. As a part of the transaction, and as a part consideration for the purchase, Blythe, Thompson and I gave our notes to Foster for $1,290, which I afterwards paid. It was understood that we were to be reimbursed out of the property which was supposed to be worth more than all the encumbrances, and it was promised me that I should be at no expense in the matter. I was not a member of the com-

pany when Foster conveyed to me. When the deeds of trust became due, we were notified that they must be paid or the property would be sold. Foster thereupon got up an arrangment with Sickles and Billings. The Frederick Nickel Company was organized under the general laws of the State, and the property which I held as trustee for the stockholders of the Copper Creek Company was sold to that new company in July, 1864. The sale was made to get back what we had paid out of pocket. I think that the amount due to Hall was paid before July, 1864. One half of the property was sold to J. B. Sickles and Frank L. Billings for $4,000. The property was sold by me with the consent of Foster, Blythe, and Thompson. Blythe and Thompson received nothing from the sale, except that it was agreed that they should be relieved from all liability under the deeds of trust; Sickles and Billings were to have three tenths of all the stock of the new company, and I had three tenths, and the other four tenths were to be reserved stock in which Sickles and Billings were to have one half interest and I was to have the other half. Sickles and Billings paid $4,800 for improvements of the property, as Billings told me; I only speak from what I was told by Billings. At the time the $4,000 was paid, Foster got $2,000 and I got $2,000. Foster charged $500 for his negotiation, which he received. In all there was $2,000 passed over to Mr. Foster on account of this sale. Of the $4,000 received at this sale, $3,500 was applied by me on the deeds of trust, $1,500 coming from Foster; the balance due on the deeds of trust I paid. Besides the $4,000 already spoken of, Billings and Sickles also put in $4,800 to develop the mines, for which they took a lien on the reserved stock."

The witness further said: "I have before stated that Blythe and Thompson were insolvent at the time of the sale to the Frederick Nickle Company. I never paid anything for it."

Ques. "Was not the assumption by you, Blythe and Thompson of the payment of the notes secured by the deeds

of trust understood to be a consideration for the stock which you respectively held in the Copper Creek Company?"

Ans. "Perhaps it might be so considered; I have stated what the facts were."

J. B. Sickles testified that he and Billings bought a one half interest in the property at Frederickstown, and thought that they paid between six and seven thousand dollars, and understood that the purchase was to be made from Fogg and Foster.

Levi W. Renelle testified that between December, 1862, and July, 1864, there were put upon the property at Frederickstown improvements consisting of a crushing machine, a mill, a reservoir, and other improvements, amounting in the aggregate to about $2,000 in value; and that the mines were worth at any time, between 1862 and 1864, and still are worth $20,000; that Foster had told him they were worth $100,000.

W. B. Tolar testified that the lands and mines at Frederickstown were considered valuable; that he considered them worth $100,000; that valuable improvements had been put upon the premises in 1863 and 1864.

Samuel C. Collier testified that the mines and property were valuable, and thought that to a party having capital and skill they would be worth $100,000, and pay a good dividend on that sum.

This was all the evidence in the case. The court ordered the bill dismissed.

*Cline, Jamison & Day*, for appellants.

The petition proceeds on the ground that the plaintiffs had a debt and execution therefor against a corporation, that there was no corporate property out of which it could be made, but that the defendants being stockholders had sold the corporate property, thus taking it out of the reach of the plaintiffs, and appropriated the proceeds to themselves. And it is sought to follow the proceeds of this sale in the hands of the defendants on the ground that the corporate property

was primarily liable for the payment of the debts of the corporation, and that when converted by the stockholders it can be followed by creditors as a trust fund liable for the payment of their debts—Wood v. Dummer et als., 3 Mas. C. C. 308.

The same principle in regard to the liability of stockholders is laid down in Vose v. Grant, 15 Mass. 491 & 522 ; Spear v. Grant, 16 Mass. 15 ; Scott v. Eagle Fire Co., 7 Paige Ch. 198 ; Bigelow v. The Congregational Society of Middleton, 11 Vt. 283.

The doctrine of Wood v. Dummer is sanctioned in Cooper v. Frederick, 9 Ala. 142. See also Bk. of St. Mary's v. St. John, Powers & Co., 25 Ala. 602 ; Gratz v. Reid, 4 B. Mon. 195-7 ; Dudley v. Price's Adm'r, 10 B. Mon. 84 ; Taylor v. Miami Exporting Co. et als., 5 Ohio, 164 ; Percy v. Millaudon, 3 Lou. An. 585.

*Currier*, for respondents.

I. The Copper Creek Mining and Mineral Company is not shown to be extinct, and is therefore a necessary party to these proceedings—3 Mas. C. C. 315 ; 2 id. 181.

(*a*) The petition is framed on the assumption that the defendants hold effects belonging to this corporation, and prays an application of them to the plaintiffs' use without giving the corporation an opportunity to be heard.

(*b*) The plaintiffs falsely assume that the sale of the corporation party dissolved it, and presents this as an excuse for not joining the corporation and making it a party to the suit.

The petition does not state facts sufficient to constitute a cause of action or justify the interference of a court of equity. the allegations of the petition resulted in this—that the proceeds of a sale of a certain property alleged to belong to the Copper Creek Mining Company came to the possession of the defendants, and were held by them when this suit was instituted. This sale, which is presented as the foundation of this suit, is alleged to have been made, not by the cor-

poration, but by its stockholders. But the stockholders, as such, could not alienate the corporate property. The sale therefore was void and of no effect, and passed no title. Corporation property must be conveyed by the corporation acting through its corporate officers. Had the sale been made by the corporation itself, that fact would not help out this suit, since it is not alleged that the corporation distributed the proceeds of the sale to the defendants as their property. The petition, at the most, presents the defendants as the custodians and holders of effects of the corporation, or else as debtors to it; and in either case subject to garnishment. If it were true that the defendants held corporate effects, as alleged, then the corporation is not insolvent, since the assets were sufficient to pay the debts—Sto. Eq. Jur. § 1252; Wood v. Dummer, 3 Mas. C. C. 308; Mumma v. Potomac Co., 8 Pet. 281, 286 ; Vose v. Grant, 15 Mass. 505, 517, 522; Spear v. Grant, 16 Mass. 91, 15.

II. The proof negatives the allegations of the petition averring corporate effects in the hands of the defendants. It is not shown in proof that the corporation ever owned a dollar of property. The deed from Foster to Fogg, read in evidence, rests the title to the property therein described in Fogg as trustee to the use, not of the corporation, but of parties owning the stock of the corporation. It was manifestly not the intention of this conveyance to vest any title, legal or equitable, in the corporation. The proof shows that the property was encumbered at the time of the conveyance by deeds of trust for $10,500, and that the notes of Fogg and others to Foster for $1,290 were a charge against it, making $11,750. All this was to be satisfied out of the property; and the sale to Billings and Sickles shows that the entire property in 1864, at the time of this sale, was worth no more than $8,000—one half interest being sold to Billings and Sickles for $4,000 cash, leaving Fogg to reimburse himself for his advances, amounting to some $10,000, out of the other half interest, as best he could.

Hill et al. v. Fogg et al.

HOLMES, Judge, delivered the opinion of the court.

This was a petition in equity on behalf of the plaintiffs and others as creditors of the corporation called the Copper Creek Mining Company, praying that the defendants might be charged with the amount of the debt due them from said corporation to the extent of the assets of the corporation (which it was alleged had been dissolved) which had come to their hands subject to a trust for the payment of debts.

Certain lands had been conveyed to Josiah Fogg in trust for the benefit of the stockholders of the Copper Creek Mining Company. Admitting that this deed created a trust for the use of the corporation, the evidence clearly established the fact that the property had been sold, and the proceeds applied to the payment of prior liens and the demands of other creditors. Where a corporation is dissolved, there is no doubt that a court of equity will lay hold of the assets for the purpose of applying them to the payment of the creditors as against others than *bona fide* creditors and purchasers. The evidence wholly failed to show that any moneys or assets belonging to this corporation had come into the hands of the defendants, which had not already been applied to the payment of prior liens on these lands and to the extirpation of the claims of *bona fide* creditors of the corporation.

Even if this corporation owned any interest in these lands, a sale of their property to another corporation *bona fide* and for a valuable consideration would neither amount to a dissolution of the corporation nor make the property sold subject to a trust in the hands of such purchaser for the benefit of the creditors—Powell v. North Mo. R.R. Co., Oct. T., 1867. Nor does it appear that the proceeds of the property sold came into the hands of the defendants merely as stockholders by way of distribution among them.

On the whole case made, we find no equity in the petition.

Judgment affirmed. The other judges concur.