## HOWARD HASBROUCK et al., Respondents, v. ALBERT RICH, Sheriff, Appellant.

### Kansas City Court of Appeals, May 22, 1905.

1. **FRAUDULENT CONVEYANCES: Use of Grantor: Going Concern: Renewals.** Where a mortgage on a going concern, such as a mine, provides for the sale at the request of the mortgagor, of useless tools and machinery, the proceeds of the sale to be held by the trustee until such tools and machinery are replaced by new, the conveyance is not to the use of the grantor within the meaning of the statute as would be the case with mercantile property which is being constantly sold and replenished.

2. ———: ———: ———: ———: **Real Estate.** Whatever may be the effect of such provisions in relation to real estate they cannot render the mortgage void *in toto* as to creditors.

3. ———: ———: ———: **Insurance: Foreclosure.** Nor can a provision for the trustee to hold the insurance money in case of fire until the mortgagor rehabilitated the property and against foreclosure until a given portion of the bondholders request the same, have the effect to avoid the mortgage.

4. **CORPORATIONS: Charter: Organization: Estoppel.** Where the charter·authorizes the meeting of the directors and transaction of business outside of the limits of the chartering State, the fact that the corporation was organized in another State, and, in fact, acted as a corporation and was so dealt with by the creditors, estop him from asserting that it is not a corporation.

Appeal from Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*H. W. Currey* and *F. L. Forlow* for appellant.

(1)   Plaintiff's mortgage is void because it permits the mortgagor to sell the mortgaged property and appropriate the proceeds thereof to his own use and benefit; and because it provides that the mortgagor may sell the mortgaged property and substitute other property in lieu thereof.   There are some decisions in this State which countenance a qualified right of substitution by the mortgagor in certain cases, such as are necessary to supply breakage, loss, or waste of the mortgaged property; but no case goes so far as to approve of an unlimited power of substitution.   Jennings v. Sparkman 48 Mo. App. 246; Scudder v. Bailey, 66 Mo. App. 40; State to use v. Busch, 38 Mo. App. 440; Goddard v. Jones, 78 Mo. 518; McCarthy v. Miller, 41 Mo. App. 200.

(2)   The mortgagor was authorized by the terms of the mortgage, read in evidence, to withdraw from the operation of the mortgage as much of the property as it saw fit.   And the mortgage was therefore for the use and benefit of the mortgagor, and hence void.   Bank v. Bank, 171 Mo. 323; Walton v. Weimer, 24 Mo. 63; Stanley v. Bunce, 27 Mo. 269; Goddard v. Jones, 78 Mo. 518.   (3) If a mortgage contains provisions which invest a power of compulsion which one of the several mortgagees may use for the benefit of the mortgagor, or if the instrument contains a provision which invests the mortgagor with a power of compulsion which he may use for his own benefit, then the instrument is fraudulent and void.   Hamill v. England, 57 Mo. App. 106; Seeger v. Thomas, 107 Mo. 635; Gro. Co. v. Miller, 53 Mo. App. 107.   (4) The Missouri Blanket Vein Zinc Company obtained its certificate of incorporation from the State of Delaware on the 29th day of June, 1899.   The stockholders, socalled, held the first or organization meeting on June 30, 1899, in the city and State of New York, and there elected a board of directors.   No other organization meeting was ever held.   And it was the board

of directors elected at this so-called meeting held in New York who authorized the execution of the mortgage relied on by plaintiffs. The first or organization meeting of the corporation must be held within the State issuing the charter. Camp v. Byrne, 41 Mo. 534; Railroad v. McPhearson, 35 Mo. 13; Duke v. Taylor, 35 Fla. 64; Miller v. Ewer, 27 Me. 509; Freeman v. Water Power Co., 38 Me. 343; Heath v. Mining Co., 39 Wis. 146; Hilles v. Parrish, 14 N. J. Eq. 380; Silver Co. v. Smith, 163 Mass. 262; Smith v. Mining Co., 64 Md. 85; Harding v. Glucose Co., 182 Ill. 551; Aspenwall v. Railroad, 83 Am. Dec. 389; Taylor v. Braham, 48 Am. St. 252; Walton v. Oliver, 49 Kan. 107.

*Howard Hasbrouck* and *Howard Gray* for respondent.

(1) It will also be noticed that all the parties attacking this instrument, through the sheriff defendant, are creditors whose demands accrued long after the execution of the instrument. Landers v. Ziehr, 150 Mo. 403; Grocery Co. v. Smith, 74 Mo. App. 419; Krueger v. Vorhauer, 164 Mo. 156; Fehlig v. Busch, 165 Mo. 144; Zeliff v. Schuster, 31 Mo. App. 493; Ziekel v. Douglas, 88 Mo. 382. (2) The defendant stands in the shoes of the subsequent creditors and can only make such defense as they could make. Antram v. Burch, 84 Mo. App. 256. (3) The creditors cannot say that the Missouri Blanket Vein Zinc Company was not duly organized because they contracted with it as such and have sued it as such, and say that it was organized under the laws of Delaware, and the defendant sets up in the answer herein that he is holding this property under writs of attachment issued in such cases. Land Co. v. Railroad, 161 Mo. 595; Hotel v. Hunt, 57 Mo. 126; Finch v. Ulman, 105 Mo. 255; Mercantile Co. v. Needles, 52 Mo. 17; Ins. Co. v. Brown, 60 Mo. 252; Light Co. v. St. Louis, 84 Mo. 202; Trust Co. v. Railroad, 82 Fed. 642; Trust

Co. v. Railroad, 95 Fed. 497. (4) The only other question to be discussed is what, if any, effect it had upon the validity of the mortgage above mentioned by paragraph fourth thereof, relating to the sale or exchange of certain of the real or personal property subject to the mortgage. This discussion is raised by section 3397 of the Revised Statutes. (5) Cases in which the mortgage covers a stock of goods, and the mortgagor reserves the right to retain possession thereof and to sell in the usual course of business without being obligated in any way to turn over the proceeds of such sales to the mortgagee. Such a mortgage violates the statute and is void. Barton v. Sitlington, 28 Mo. 164; White v. Graves, 68 Mo. 218; Billingslee v. Bunce, 28 Mo. 547; Sauer v. Behr, 49 Mo. App. 86; State v. Jacob, 2 Mo. App. 183. (6) Cases in which the mortgage covers a stock of goods and in which the mortgagor reserves the right to retain possession and to sell in the usual course of trade, but with the obligation to turn over the proceeds of such sales to the mortgagee. Such a mortgage does not violate the statute and is valid. Bank v. Powers, 139 Mo. 432; Hubbell v. Allen, 90 Mo. 574; Metzner v. Graham, 57 Mo. 404; Manhattan Co. v. Webster Co., 37 Mo. App. 145. (7) Cases in which the mortgage contains a provision for substitution of the mortgaged property by the mortgagor when such substitution, through disuse, breakage or obsoleteness becomes advisable, especially if the property mortgaged includes a manufacturing or mining plant. Such a mortgage does not violate the statute and is valid. Jennings v. Sparkman, 48 Mo. App. 246; Thompson v. Foerstel, 10 Mo. App. 290.

ELLISON, J.—The plaintiffs are trustees in a deed of trust in the nature of a mortgage given by a mining corporation known as the Missouri Blanket Vein Company, whereby an issue of bonds of certain denominations was secured. Defendant is the sheriff of Jasper county, and as such had seized certain property (cover-

ed by the mortgage) under a writ of attachment sued out by certain creditors of the company. The plaintiff trustees brought this action in replevin against the sheriff and they prevailed in the trial court.

The only question presented by the record is whether the provisions of the mortgage render it void as to creditors as a matter of law. Among the provisions which it is urged make the mortgage void is one which makes it mandatory on the trustees to sell any of the mortgaged property on the written request of the company whenever the latter deemed that it could not be further advantageously used. But it is provided that before a sale, the trustees must have the property appraised. And upon a sale at not less than appraisal the money realized shall be paid to the trustees and held as security for the bonds, until the company shall thereafter have acquired property of equal value to stand instead of the property sold. The provision reads:

"Fourth. So long as the company shall not be in default in the payment of any interest or principal or in the exchange of, any of the bonds issued, as herein provided, any of the real or leasehold property, subject to this indenture, which cannot be advantageously used in the proper and judicious operation and management of the business of the company, or the sale of which shall become necessary for any cause, may be sold or exchanged for other property; and it shall be the duty of the trustees, or either one of them, upon the written request of the company, to execute suitable instruments releasing the same from the lien, and effect of this indenture. But in case of any such sale or exchange the company covenants and agrees as follows:

"(a) That before any sale or exchange of property shall be made, such property shall be appraised by the trustees, or either one of them, or by an appraiser chosen or approved by said trustees, or either one of them.

"(b) That in case of a sale of any of said property or of any interest therein, the price or proceeds of such

sale, not less than the appraised value of such property or interest, sold, shall be paid to the trustees, or either one of them, and held for the further security of the said bonds, until the company shall thereafter have expended money in the erection of buildings, or other permanent improvements on the property of the company, subject to this indenture, or in the purchase of other real property or mining leasees, free from encumbrance, or of leasehold property, at a price not exceeding its or their appraised value, which appraisal shall be made by said trustees, or either one of them, or by an appraiser chosen and approved by said trustees, or either one of them, and until such property shall have been conveyed to the trustees, to be held by them hereunder, as part of the mortgaged premises; whereupon the trustees, or either one of them, on being certified of such facts, shall pay to the company out of any money received and held by them, or either one of them, as the proceeds of property sold as aforesaid, an amount equal to the expenditures so made by the company in order to reimburse it therefor.

"(c)    That in case of an exchange of real property, other property free from incumbrances, and of an appraised value, which value shall be determined by the trustees, or either one of them, or by an appraiser chosen and approved by the trustees, or either one of them, equal to the appraised value of the property conveyed, shall be received by the company, and conveyed to the trustees, to be held by them hereunder, as part of the mortgaged premises.

"The company shall be permitted to alter, remove or otherwise dispose of any buildings, fixtures, plant, machinery, boilers, tools, pumps or other personal property, covered by this indenture, which cannot, where located be advantageously used in the judicious operation and management of the business of the company. The company, however, covenants that it will maintain and preserve the value of the mortgaged premises or proper-

ty from impairment or reduction, by restoring to their original value, and buildings, fixtures, plant or machinery, or personal property which may be altered, or removed from one portion of the mortgaged premises or property to another, and by replacing any buildings, fixtures, machinery, plant or other property which may be removed or otherwise disposed of by other buildings, fixtures, plant, machinery or other property, of at least equal value, which shall be erected or placed upon or attached to the premises or property hereby mortgaged, either before or promptly after such removal or other disposition."

The statute of this State (section 3397, Revised Statutes 1899) avoids deeds conveying chattels to the use of the grantor. That statute has been applied to a variety of cases of attempted disposal of personalty, the effect of which was to hinder creditors and to protect the debtor. And defendant urges that the effect of the foregoing clause enabling the mortgagor company to dispose of personalty connected with the mining property, is nothing less than a clause for the immediate benefit of the company at the expense of general creditors, both prior and subsequent. But we do not think so. The personal property involved is not merchandise in constant sale at retail to be renewed and resold, as in the ordinary mercantile trade; thus enabling the debtor to carry on his business free of molestation by creditors. Such was the character of property in State to use, etc., v. Mueller, 10 Mo. App. 87; Oliver Grocer Co. v. Miller, 53 Mo. App. 107, and other cases cited by defendant. The property here referred to is not property to be sold for the benefit of the mortgagor, but it is rather property which may become worn out or otherwise useless in the service of the mortgagees. The mortgage provides that such property may be sold, or otherwise disposed of, provided that other like property shall be immediately substituted and the mortgage security not impaired. Thus, if a machine necessary to mining should

become worn and impractical for further use, it could be disposed of and a proper and suitable one substituted, to the end that the security of the mortgagees might not be impaired. But in all this, nothing was to result to the benefit or use of the mortgagor company. In such respect differing from the cases of McCarthy v. Miller, 41 Mo. App. 200; Walter v. Wimer, 24 Mo. 63; Stanley v. Bunce, 27 Mo. 269; and other like cases. We may appropriately borrow the words of Judge THOMPSON in Jennings v. Sparkman, 48 Mo. App. 246: "It is plain that this language does not confer upon the mortgagor any general power of sale, or any general power of substitution by way of sale, but that the only power of substitution which it confers is a power of substitution for the purpose of supplying breakage, loss or waste of the property. This does not bring the case within the decision of the Supreme Court in Goddard v. Jones, 78 Mo. 518, nor within the decision of this court in State to use v. Busch, 38 Mo. App. 440. When it is considered that a part of the property covered by the mortgage was a sawmill, portions of which are constantly liable to wear out or get broken, the appropriateness of the language to the subject-matter of the deed is apparent; and it is not at all apparent that the parties intended thereby to make a conveyance to the use of the mortgagor, within the meaning of our decision." See also Cook on Corp., sec. 798.

Mortgages of railroad property are analagous to that in controversy. In such conveyances the distinction is made between the character of chattels mortgaged and those more closely pertaining to a mercantile character, such as we have referred to above. It is said by the courts that this kind of property is necessarily undergoing constant wear and consequent destruction, and that mortgages on going concerns would have but little value if the lien could not be made to apply to a renewal of such property. That there was a constant necessity, from the very nature of the property, to dis-

pose of worn out ties, rails, machinery and other property and replace it. That such necessity naturally forbids an inference of a fraudulent purpose in providing that it may be done. That such provisions were in the interest of the mortgagees and consequently, as a result, also to the interest of all other creditors. [Butler v. Rahm, 46 Md. 541; Ludlow v. Hurd, 1 Disney 552, 561; Railroad v. Woelper, 64 Pa. St. 366; Shaw v. Bill, 95 U. S. 10.]

Those parts of the mortgage which we have quoted which refer to the power to sell real estate are qualified by further provisions requiring the trustees to appraise such property, the sale not to be at less than the appraised value, and the proceeds thereof turned over to the trustees to be held until property of equal value be purchased and held as part of the mortgaged property to secure the payment of the bonds. Whatever could be said of this part of the mortgage in case of controversy between the mortgagees and persons claiming title, or an interest in the real estate which might be thus substituted, we cannot see any grounds for declaring that such provision renders the mortgage void *in toto* as to creditors. In regard to real estate different considerations enter from those concerning personalty. No actual fraud appears and there is nothing in the mortgage which shows that any fraud can result to the creditors at whose suit the defendant seized the personal property in controversy. The only ground upon which the defendant can justify in the present case, is the absolute invalidity of the mortgage; such invalidity springing from the mortgage being to the mortgager's use. The provisions as to the sale of the real estate do not sustain such contention.

The defendant presents a great number of other reasons which he urges make the mortgage fraudulent as a matter of law. Those already referred to are all that we care to notice in detail. The others we do not regard as substantial. It was certainly not a fraud upon cred-

itors to provide that in case of fire the insurance money should be paid to the trustees and by them held as security for the bonds until the company should rehabilitate such property.

So the provision that a foreclosure should not be had until a certain portion of the bondholders so requested is not such an one as renders the mortgage void. Indeed, such conditions are believed to be usual and the only practical way in which to draw a mortgage of like nature.

It is finally insisted by defendant that the mortgagor company was not properly organized and put into shape as a legal entity capacitated to execute a mortgage. It seems that the corporation was organized under the laws of Delaware. The point of objection is that, while the certificate of incorporation was granted by the State of Delaware, the organization was in fact had afterwards in the State of New York, where the board of directors were elected and entered upon the discharge of duties connected with the management of the affairs of the company.

Defendant's point, as disclosed by brief of counsel is that, "the first organization meeting of the corporation must be held within the state issuing the charter;" that is the State of Delaware instead of New York. It is shown by the plaintiffs that the charter of the corporation provides for the meeting of directors and transaction of business outside the original state granting the charter. But be that as it may, we do not see where defendant as representative of the attaching creditors has any right to make such defense. The corporation was and is an acting concern and the creditors have dealt with it as such; and their claims arose out of contracts with the corporation as such. They are now estopped from asserting to the contrary. [Continental Trust Co. v. Railway Company, 82 Fed. Rep. 642; Toledo Ry. Co. v. Continental Trust Co., 95 Fed. Rep. 497, 507.]

We are satisfied with the judgment of the trial court and order that it be affirmed. All concur.