# H. H. ELLIOTT, Respondent, v. GEORGE SULLIVAN et al., Appellants.

### Springfield Court of Appeals, May 8, 1911.

1. **CORPORATIONS: Rejuvenating Non-Active Corporation: Liability of Stockholders: Collateral Attack.** A mining corporation was organized in 1899, a charter procured and the company operated for two years, until it had expended its capital, when it quit active business. One of the defendants then purchased all the stock of this corporation. In 1909, in order to encourage other mining operations, this defendant transferred a certain number of shares of stock in this corporation to all those who paid in a certain amount for the purpose of promoting this mining enterprise. The mining operations were carried on in the name of the corporation and while so operating certain goods were sold to the corporation for which it was unable to pay, and this suit was against those who held shares in the corporation, to recover the price of the goods sold, on the theory that they were liable as individuals, because they were operating under the name of a defunct corporation with a claimed capital stock greatly in excess of the value of the property owned by the company, in order that they might get credit and also escape personal liability. It appeared in evidence that the plaintiff and his assignors, were familiar with the re-organization of this corporation and sold and gave credit to the corporation with full knowledge thereof. *Held*, that the stockholders were not individually liable for the debts of the corporation, and that plaintiff could not attack the existence of the corporation in this collateral proceeding.

2. **———: False Representations: Liability of Stockholders: Pleading: Sufficiency of Petition: Sufficiency of Evidence.** Plaintiff sought to hold the defendants jointly and severally liable on the theory that he had extended credit for goods sold, because they had falsely represented that they were stockholders in a corporation with a capital stock of $5000, fully paid up, when in fact no such corporation had been organized. The petition is *held* to state a cause of action, but the evidence is examined and *held* that it did not show defendants made any false statements as to the property owned by the corporation, or its capital stock, or any other statements to induce the sale of goods or the giving of credit to the corporation.

3. ————: Dealing With Corporation: Estoppel to Deny Existence: Irregularities in Organization: Charter Not Issued.  The general rule is that where a person has contracted and dealt with another, as a corporation, he would be estopped in a proceeding wherein such dealings are in issue, to deny the existence of the corporation, but this rule has been limited to those cases where there are irregularities in the organization of a corporation and has not been extended to cases where no charter has been obtained from the Secretary of State.

4. ————: Dissolution: Judicial Determination.  A corporation is not to be deemed dissolved by means of any misuser or nonuser of its franchise, until default has been judicially ascertained and declared.

5. ————: ————: Non-Active Corporation: Stock Owned by One Person.  A corporation is not dissolved by the mere fact that it has ceased to transact business for several years; that it owns no property and all of the stock of the corporation is owned by one individual.

6. ————: ————: Matters Not Effecting Dissolution.  A dissolution is not effected by a failure to elect officers; by a sale or assignment of all the corporate property; by the fact that one person owned all the stock; by a cessation of all corporate business; by death of all its stockholders; by insolvency; nor in all cases, by a consolidation with another corporation under statutory authority.  For certain purposes, however, such as rendering stockholders liable on their statutory liability or relieving directors from a penal liability, dissolution is held to arise by some of these acts.

Appeal from Lawrence Circuit Court.—*Hon. Carr McNatt*, Judge.

REVERSED.

*McPherson & Hilpirt* for appellants.

(1)  The court erred in overruling defendant's demurrer to plaintiff's petition.  Bates v. Wilson, 14 Colo. 56; Morawetz on Corporations, secs. 769, 1022; Jayser v. Breman, 16 Mo. 88; Wells Co. v. Gastonia Co., 198 U. S. 177; Railroad v. Coal & Mining Co., 161 Mo. 288; Armour v. Bements Sons, 123 Fed. 56; Lead Co. v. Paint Co., 8 Mo. App. 264; Bank v. Rockefeller, 195 Mo. 15;

Webb v. Rockefeller, 195 Mo. 57. (2) The concentration of all the shares of stock of a corporation in the hands of a single individual does not work a dissolution of the corporation, and this rule seems to have been universally recognized by the courts. Spencer v. Champion, 9 Conn. 536; Mfg. Co. v. White, 42 Ga. 148; State v. University, 5 Ind. 77; Stagg Co. v. Taylor, 113 Ky. 709, 68 S. W. 862; Russell v. McLellan, 14 Pick. (Mass.) 63; Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 276; Bridge Co. v. Traction Co., 196 Pa. St. 25, 46 Atl. Rep. 99. Button v. Hoffman, 61 Wis. 20, 20 N. W. 667; Banking Co. v. Eisenmen, 94 Ky. 83; Swift v. Smith, 65 Md. 428, 5 Atl. 534; Kuch v. Louisville, 101 S. W. 373. (3) It was ruled in Oxley State Co. v. Butler Co., 121 Mo. 641, after a careful consideration of the authorities, that the mere insolvency of a company, and its inability to carry out the purposes of its incorporation would not ipso facto work a dissolution. Ready v. Smith, 170 Mo. 172; Hill v. Fogg, 41 Mo. 563; Bank v. Robidoux, 57 Mo. 446; Hotel Co. v. Saur, 65 Mo. 279; Buell v. Buckingham, 16 Iowa, 296. (4) The legality of its incorporation could be inquired into by the state, but by no one else, and this is as true where the corporation is formed under a general law as it is where the corporate existence is claimed under a special charter. Stout v. Zulich, 48 N. J. L. 599; Dugan v. Colo. N. I. Co., 11 Colo. 113; Finch v. Ullman, 105 Mo. 263; Catholic Church v. Tobbin, 82 Mo. 424; Bradley v. Reppell, 133 Mo. 53; Bibb v. Hall, 100 Ala. 96; Rheinhard v. Virgo, 107 Mo. 616. (5) Such company is a corporation de facto from the time of issuing the certificate by the Secretary of State and must remain so until it is dissolved by judicial proceeding upon behalf of the State. Swartwont v. Railroad, 24 Mich. 389; Church v. Froislie, 37 Minn. 447; Doty v. Patterson, 155 Ind. 60; Johnson v. Okerstrom, 70 Minn. 309. (6) Plaintiff at the time of the sale of said goods knew all the facts of the incorporation of the company to whom he was selling the goods and he was acquainted with the

amount, character, and kind of property the corporation owned. This conduct with such knowledge estops him. Reynolds v. Hood, 209 Mo. 611; State ex rel. v. Allen, 132 Mo. App. 98; Hasbrouck v. Rich, 113 Mo. App. 389; Trust Co. v. Railway, 82 Fed. Rep. 642; Railroad v. Trust Co., 95 Fed. 497. Land Co. v. Railroad, 161 Mo. 604; 4 Thompson on Corporations, sec. 5275; 1 Beach on Private Corporations, sec. 13; Railroad v. McPherson, 35 Mo. 13; Ins. Co. v. Needles, 52 Mo. 18; St. Louis v. Shields, 62 Mo. 247; Stoutimore v. Clark, 70 Mo. 471; Mining Co. v. Richards, 95 Mo. 106.

*John L. McNatt* and *H. H. Bloss* for respondents.

(1) Where a person contracts or sells goods to a firm believing at the time that it is a corporation, when in fact it is not such and he is thus left remediless to enforce his rights against a corporation, he is not on that account precluded from recovering against the supposed incorporators as individuals. The principal would be different if Mr. Elliott were seeking to deny the legal existence of a corporation, where he had received some benefit from it by contract, or otherwise; and it was seeking to have him make some just compensation. Cleaton v. Emery, 49 Mo. App. 353; Mining Co. v. Richards, 95 Mo. 110; Furniture Co. v. Crawford, 127 Mo. 364; Hart v. Salisbury, 55 Mo. 310; Martin v. Powell, 79 Mo. 401; Richardson v. Pitts, 71 Mo. 128; Journal Co. v. Nelson, 133 Mo. App. 482. (2) Where persons had joined together intending to form a corporation and had assumed a corporate name, but the incorporation failed of accomplishment, and goods are ordered and sent in a corporate name, held that such persons were liable individually. Fur. Co. v. Crawford, 127 Mo. 364; Smith v. Warden, 86 Mo. 399; Zeigler v. Fallen, 28 Mo. App. 298. (3) A business corporation will be regarded by the courts as dissolved where it is necessary to protect the rights of creditor, whereas, under the same state of facts, if to subserve the rights of creditors, it should

regard a corporation not dissolved, it will so hold. Yourkee v. Ins. Co., 180 Mo. 169; State ex rel. v. Society, 9 Mo. App. 120. .(4) The undisputed facts showed that the defendants began the enterprise by resolving that they were the owner of corporate stock, this so-called corporate principal had not a dollar of means to carry on a mining business, unless the defendants by reason of their charity, saw fit to contribute something, at the same time they were the real beneficiaries, the old corporation they knew was insolvent, and at the time of the contraction of these debts sued for they knew that the mining business was getting no results and the debts were getting larger all the time, so that as Mr. Gardner says, when they ceased they owed something over $5000. If these facts do not show the ear marks of fraud, then we do not recognize such ear marks when we see them. Herboth v. Gaal, 47 Mo. App. 255; Cole Mfg. Co. v. Jenkins, 47 Mo. App. 664; Blackwell v. Fry, 49 Mo. App. 638; Leedom v. Furn. Co., 38 Mo. App. 425; Reid, Murdock & Co. v. Lloyd, 52 Mo. App. 278. (5) Where a corporation quits business for many years, divides its property and surrenders same to its stockholders, fails to elect officers or hold any election whatever, and all the stock comes into the hands of one person, it will be treated as dissolved by the courts, when the rights of third parties intervene. Bank v. Kellog, 52 Mo. 583; Moore v. Whitcomb, 48 Mo. 543; State ex rel. v. Society, 9 Mo. App. 114; Bank v. Gallaher, 43 Mo. App. 490.

GRAY, J.—Plaintiff's petition contains five counts, in which he asks judgment for goods sold and delivered to the Kansas City-Aurora Mining Company. The counts are substantially alike, except the first is for goods sold and delivered by the plaintiff, and the others are for goods sold and delivered by assignors. In each count there is a general allegation that the goods were sold and delivered to the Kansas City-Aurora Mining

Company, a partnership composed of the defendants. After said general allegations, it is alleged in each count, that the defendants claim to be engaged in business as a corporation, and that as such corporation, they claim they bought the goods sued for herein, and the petition then proceeds in the following language:

"Plaintiff further says that the defendants, each and every of them, are liable to him for the reasonable value of the goods aforesaid so sold, as individuals, jointly and severally, and not in law authorized to have the amount here sued for charged against The Kansas City-Aurora Mining Company as a corporation, for reasons hereinafter pleaded, as follows, to-wit: Many years prior to the association of the defendants together for mining purposes, which association occurred in 1909, there was incorporated under the laws of Missouri, a corporation known as The Kansas City-Aurora Mining Company, and at the time of the incorporation of said Company, its capital stock of $5000 was fully subscribed for, and fully paid up, and it had engaged in the mining business thereafter until all of its capital stock was exhausted, and it had become a worthless and insolvent corporation; and thereafter during the year 1909, the defendants herein, desiring to engage in the business of mining, and conspiring together for the purpose of cheating, wronging and defrauding this claimant and others to whom they might become indebted in the prosecution of said mining business, should said business not prove a success, by attempting to escape the personal liability that would result to them, and each of them, should they engage in business as co-partners, and further conspiring together to avoid the responsibilities they would assume should they incorporate a company under the laws of the State of Missouri, undertook, without authority from said corporation, to engage in business under the name of the said Kansas City-Aurora Mining Company, thus connecting their individual business with the said corporate name, and having thus assumed the said cor-

porate name, defendants falsely and fraudulently rep·
resented that they had a capital stock of $5000 which
was fully paid up, and constituted a basis for credit to
which this claimant and all others would have recourse
for the payment of their debts, when in fact and indeed
they had no capital stock at all which would serve as a
basis of credit, and to which recourse could be had for
the payment of debts, but further conspiring together for
the purpose of effectuating the contemplated fraud as
aforesaid, the defendants conspired with an officer or
agent of the said insolvent corporation, and fraudulently
induced him to issue to these defendants $5000 of the
capital stock of the said corporation, without paying
anything    therefor,    and    after    having    issued    to
them the said capital stock, the said defendants under-
took and did carry on said mining enterprise in the name
of the said corporation, and for the purpose of securing
credit from this claim and others, represented that they
had organized a corporation with $5000 capital stock
fully paid up, and which would serve as a basis of credit,
when in fact they had no corporate organization at all,
or any capital stock. That for the reasons aforesaid,
said corporation cannot be held liable for the payment of
the plaintiff's debt, and being insolvent, the same could
not be collected from it if judgment were secured."

There was a demurrer filed to the petition, and the
same was overruled, and defendants answered, denying
that they were members of the co-partnership, and alleg-
ing that the plaintiff and one of the assignors had in·
stituted proceedings against the corporation in its cor·
porate name in the circuit court of Lawrence county, and
had obtained judgments against the corporation on the
identical demands sued for, and had levied execution
upon the corporation's property under said judgment,
and disposed of the same.

The trial court found the issues in favor of the
plaintiff and rendered judgment on each count for the
amount sued for.

The facts of the case may be stated as follows: In 1899, a Mr. Miller and his associates, procured from the State of Missouri, a charter for a company known as the Kansas City-Aurora Mining Company, with a capital stock of $5000 divided into two hundred shares of $25 each, and fully paid. The corporate life, as evidenced by the certificate, was fifty years. The company engaged in mining in Lawrence county, and in the course of a couple of years, had expended its $5000 and quit active business, and did nothing further save making some. reports when called upon by the Secretary of State. About the time the company ceased business, Mr. Miller acquired from the other stockholders all the shares of stock of the corporation. No proceedings of any kind were taken or threatened to revoke the charter of the corporation upon its quitting business in 1901.

In March 1909, the United Zinc Company, another corporation, and owner of ninety acres of land at Aurora, proposed to one Mr. Stratton that if he would associate some persons with him who were willing to advance about $500, which it was deemed would be necessary to drain the land of water, the United Zinc Company would give him and his associate a lease on the ninety acres of land, including the right to use a certain mining plant and mill and other machinery. Mr. Stratton, believing that the offer was a good one, and with others desiring to advance the mining interests in and about Aurora, called a public meeting at the Elks Club Room at Aurora, on the 9th day of March, 1909, to discuss the proposition of the United Zinc Cimpany, and with a view of interesting the business men of Aurora in the proposition. At this meeting an effort was made to get twenty men to take an interest of twenty-five dollars each, and thereby raise the $500. Mr. Miller was present at this meeting and was solicited to go into the company. Whereupon he stated that he had quit mining and did not want to mine any more, but he had a charter and was the owner of all the stock of the Kansas City-

Aurora Mining Company, and to help the matter along he would transfer to each of the persons who advanced twenty-five dollars, ten shares of the stock owned by him, and would retain ten shares for himself. The proposition was agreed to, whereupon, Mr. Miller surrendered the certificates of stock for the purpose of having them cancelled and new stock was issued to the new stockholders to whom the shares had been given by him.

An effort was made to reorganize the corporation, but on account of some irregularities, it was abandoned and another meeting held, at which all the shareholders were present, and agreed in writing to the holding of the meeting. In the meantime, the shares transferred by Mr. Miller had been transferred by three of the persons to the others interested, so that only seventeen shareholders remained. The old charter provided for three directors, and the statutory steps were taken to increase the number of directors to seven, and the statement required therefor was filed with the Secretary of State, and the certificate of the Secretary of State was procured and filed. From the time the number of directors was increased from three to seven, the corporation continued in regular manner, elected officers, held corporate meetings, bought goods for the use of the corporation, sold ores mined, and all of the same was done under the name of The Kansas City-Aurora Mining Company. The corporation received the $500 subscribed by the stockholders, accepted the lease from the United Zinc Company, and did all such things in the same manner as other corporations do in the conduct of business companies, and the goods sued for in this case were bought in the name of the corporation and actually used in its behalf.

There is no evidence that the defendants were partners, or that they held themselves out as such, or that they had any other interest in the company than as shareholders. The shares of stock were dealt in and bought and sold in the usual manner.

The petition is based upon the theory that the defendants conspired together to commit a wrong, and that they falsely represented and pretended that they had organized a corporation with a capital stock of $5000 fully paid up, and that they had the same as a basis of credit; that the plaintiff and his assignors, relying upon the truth of such statements, and believing that the defendants had organized a corporation with a capital stock of $5000, extended credit; that in truth and in fact, no corporation was organized, and the defendants had fraudulently procured credit, and therefore, should be held liable as co-partners or individuals.

We believe the petition states a cause of action, and if the evidence supports it, the judgment holding the defendants personally liable should be affirmed. We have carefully read the record, and there is no testimony tending to show that any of the defendants made any false statement as to the character and kind of property owned by the corporation, or as to the capital stock of the corporation, to induce the sellers of goods to give credit, or that any of the defendants were guilty of any default or deceit to get credit for the corporation.

The plaintiff testified in his own behalf, that he was solicited to take stock in the company and to become one of the twenty-five dollar shareholders, and that he knew that the defendants sued were stockholders in the Kansas City-Aurora Mining Company, and that he further knew that $500 was all the company had to start with, and that he sold the goods on the credit of the corporation, but that some of the stockholders had personally guaranteed the payment of a part of his bill; that he sued the corporation for the account described in his petition and obtained a judgment against it and levied on its property and sold it, but realized nothing after the payment of costs.

One of the counts was based on coal by the Sinclair Coal Company. Mr. Sinclair was offered as a witness in behalf of plaintiff, and testified that he knew when the

Kansas City-Aurora Mining Company was first organized, and that he was in the employ of Mr. Miller at that time; that he knew when the company quit mining, and that it had expended all of its money, and that he knew the goods sued for in the present suit were sold to the same corporation, and that the Kansas City-Aurora Mining Company, to whom the goods were sold, was the same corporation he had known in 1900; that he knew what property the corporation owned at the time the goods were sold, but that some of the defendants, personally, guaranteed the payment of his account.

One of the counts was based upon oil furnished by the Waters-Pierce Oil Company. Mr. Carter, who was agent for the company at the time the oil was sold to the corporation, was a witness to prove the account, and testified that he thought it was a new company, and he supposed it was a corporation, and thought the $500 was all the property it had; that he extended credit and delivered the goods sued for to the corporation, with the knowledge of the character and kind of property it had.

Mr. Guernsey, travelling salesman for the Waters-Pierce Oil Company, testified that he signed the list to become one of the shareholders, and that he sold his interest to Mr. Crumpley. He was asked by defendants' attorney if at the time the Waters-Pierce Oil Company sold the goods sued for, he did not know the kind and character and amount of property owned by the corporation. The court sustained an objection on the ground that the evidence was cumulative.

Without further reviewing the testimony, it may be said that the allegations of plaintiff's petition to the effect that the defendants conspired and represented that they had organized a corporation with a capital stock of $5000 fully paid up, and that the plaintiff and the assignors of the account sued on, believing the representations, and the company had a capital stock of $5000, extended credit to the defendants, were wholly

unproven. All the evidence shows that the defendants acted in good faith, and under the advice of Mr. Edward T. White, a lawyer of experience and recognized ability, and that they believed their corporation was reorganized in legal form.

The general rule is, that where a person has contracted and dealt with another as a corporation, that he will be estopped in a proceeding wherein such dealings are an issue to deny the existence of the corporation. [West Mo. Land Co. v. Railway Co., 161 Mo. 595, 61 S. W. 847; Hasbrouck v. Rich, 113 Mo. App. 389, 88 S. W. 131; In re Western Bank and Trust Co., 163 Fed. 713.]

This rule however, has not been extended to cases where no charters have been obtained from the Secretary of State, but is limited to irregularities in the organization of the corporation, and the general rule is, until the charter has been obtained from the state, the corporation has no legal existence.

If the Kansas City-Aurora Mining Company was in existence in 1909, then we are of the opinion that the defendants are not personally liable in this case, as the plaintiff and his assignors dealt with the defendants as members of a corporation, and are estopped from denying the legal existence of the corporation on account of mere irregularities in its organization, or its failure to elect officers and hold meetings, etc.

The evidence above stated shows that the company was legally organized in 1899; that it ceased to do business in 1901, and at that time Mr. Miller acquired all the stock and what property it had, and used the same for his own benefit. No steps were taken by the state or any creditor to dissolve the corporation, and it remained in that condition except for the making of certain reports to the Secretary of State, until March, 1909, when Mr. Miller assigned to certain other persons, a portion of the shares of the corporation, and a meeting was held, officers elected, and the corporation proceeded to transact business in the usual manner.

It is claimed by the respondent that when Mr. Miller acquired all the stock of the corporation and ceased to transact business for several years, the corporation was dissolved and could not be resurrected, and cites in support of his contention the following cases: State Savings Bank v. Kellogg et al., 52 Mo. 583; Moore v. Whitcomb, 48 Mo. 543; State ex rel. v. Societe Republicana, 9 Mo. App. 114; Bank v. Gallaher, 43 Mo. App. 490.

In the Kellogg case, the corporation was insolvent and had been adjudicated a bankrupt, and the court held that on account thereof, there was such a dissolution as to authorize creditors to bring suit against the stockholders without joining the company. The court expressly recognized the rule, that a corporation is not to be deemed dissolved by reason of any misuser or nonuser of its franchise until default has been judicially ascertained and declared, in the following language relating thereto: "It may be admitted that the old and well established principle of law remains good as a general rule, that a corporation is not to be deemed dissolved by reason of any misuser or non-user of its franchise, until default has been judicially ascertained and declared."

In that case the plaintiff was proceeding under the statute to hold individual stockholders of a dissolved or defunct corporation, and the court simply held that such a creditor did not have to wait until the charter expired by limitation, but as to him the corporation would be deemed dissolved when it was adjudged a bankrupt.

In the case cited from the 9th Mo. App. the distinction made in the Kellogg case is recognized in the following language: "Purely business and manufacturing corporations are deemed dissolved when they cease to do business and have become divested of their property; but these decisions are made in reference to the rights of creditors, the statute having conferred a general liability on the stockholders."

The Gallaher case was also a suit under the statute providing that where a corporation is dissolved, leaving

debts unpaid, suits may be brought against any person who was a stockholder at the time of the dissolution, without joining the company. And the court stated that for the purpose of permitting a creditor to institute a suit, the corporation would be deemed dissolved when it had practically surrendered its corporate rights, ceased to do business and transferred all of its assets.

In Moore v. Whitcomb, the corporation was organized and chartered for the sole purpose of building and operating a specific railroad. The company failed and the state foreclosed its lien on the property, and all of the property of the corporation including its franchise to build the road was sold. The court held as the corporation was organized for the special purpose aforesaid, and because its right and authority to construct and operate the road, had been taken away, the company was thereby dissolved so as to permit a creditor to sue a stockholder as trustee without joining the corporation.

In this case no creditor is pursuing the statutory remedy against the officers. The plaintiff is not claiming that he sold goods to a corporation that has since dissolved, and that the defendants were its officers at the time of the dissolution. The question here is: Is an ordinary business corporation, organized under the laws of this state, dissolved, so that it cannot be reorganized because it has ceased to do business, to own property, and all of its stock has been acquired by one person? The following authorities in this state are to the contrary: Hill v. Fogg, 41 Mo. 563; Kansas City Hotel Co. v. Sauer, 65 Mo. 279; Staunton Copper Mining Co. v. Thurmond, 7 Mo. App. 587; Ready v. Smith, 170 Mo. 163, 70 S. W. 484; Oxley Stave Co. v. Butler Co., 121 Mo. 614, 26 S. W. 367; Bank v. Robidoux, 57 Mo. 446; Youree v. Ins. Co., 180 Mo. 153, 79 S. W. 175; Mfg. Co. v. Montgomery, 144 Mo. App. 494, 129 S. W. 460. And so is the weight of authority. [Bethel Hotel Co. v. Webster, 31 L. R. A. 706; Button v. Hoffman, 61 Wis. 20, 20 N. W. 667; Baldwin v. Canfield, 26 Minn., 43, 1 N. W. 261;

Buell v. Buckingham & Co., 16 Ia. 284; Louisville Bank-
ing Co. v. Eisenmen, 94 Ky. 83, 19 L. R. A. 684, and au-
thorities therein cited; 10 Cyc. 1276-7-8; Cook on
Stockholders, 631.]

The law is well summed up in Cook on Stock and
and Stockholders, supra, as follows: "There are certain
acts and facts which do not in themselves constitute a
dissolution. A dissolution is not effected by a failure to
elect officers; nor by a sale or assignment of all the cor-
porate property; nor by the fact that one person owns
all the shares of stock; nor by a cessation of all corporate
business and acts; nor by the death of its stockholders;
nor by insolvency; nor, in all cases, by a consolidation
with another corporation under statutory authority.
For certain purposes, however, such as rendering stock-
holders liable on their statutory liability, or relieving
directors from a penal liability, dissolution is held to
arise by some of these acts."

We held in Mfg. Co. v. Montgomery, supra: "After
the corporation had been organized, it was a separate
and distinct person from Montgomery, and notwith-
standing he was the owner of the stock, he was not
the corporation. As said by the Supreme Court of
Wisconsin, in Button v. Hogman, 20 N. W. l. c. 668:
'These general principles sufficiently establish the doc-
trine that the owner of all the capital stock of a corpora-
tion does not, therefore, own its property, or any of it,
and does not himself become the corporation. While the
corporation exists he is a mere stockholder of it, and
nothing else."

Our law requires three persons to sign articles of
agreement in order to organize a corporation, and there-
fore, a less number than three cannot organize. But
there is a difference between organizing a corporation,
and the purchase in good faith of all the stock after
the corporation has been created. In Louisville Bank-
ing Co. v. Eisenmen Bros. supra, the court said: "There
is a difference between the attempt to create one person

a corporation under this statute, and the purchase in good faith of all the stock after the corporation has been created. In the first instance, there is no corporation, and in the last, there is a franchise, the operations of which are suspended until the stock may be transferred to others."

In Swift v. Smith, 65 Md. 428, 5 Atl. 534, it is held that where one person has acquired all the stock of a corporation he may assign shares of stock to others and by so doing, the corporation can again proceed to transact the business for which it was organized.

And in Kirch v. Louisville, 101 S. W. 373, it is held that if the stock of a corporation has come into the hands of a single individual, the question whether this may be a ground for forfeiture of the franchise of the corporation can be raised only by the commonwealth, and the corporation is not subject to collateral attack by individuals under such circumstances.

Our statutes, sections 2996-7-8, Revised Statutes 1909, provide how and under what circumstances a corporation may be dissolved. It is there provided when the directors or a majority of the stockholders shall discover that the stock, property and effects of the corporation have been so far reduced by loss or otherwise, that it will not be able to pay just demands, an application may be made to the court, and upon hearing, a judgment of dissolution may be rendered.

From these statutory provisions, it is apparent that the failure of the company to have property to meet its demands, does not of itself dissolve the corporation, but it is only grounds for dissolution which afford the court the right to act in the matter.

We do not believe that under the evidence in this case, the existence of the corporation is subject to collateral attack. The company was legally organized with a fully paid up capital. At a time when no steps had been taken by the state to dissolve it for misuser or non-user of its franchise rights, these defendants ac-

quired stock in it from the legal holder thereof, and the corporation then assumed to and did engage in the very business it was organized to transact. The goods sued for were sold and delivered to it as a corporation after the company resumed business. Under such circumstances the authorities hold, and we believe, correctly, that the plaintiff cannot attack the existence of the corporation in this collateral proceeding. [Kirch v. Louisville, 101 S. W. 373; Clark and Marshall on Private Corporations; 10 Cyc. 1278; Wight v. Railroad Co., 63 Am. Dec. 522.]

The premises considered, we are of the opinion that the judgment is for the wrong party, and that plaintiff is not entitled to maintain the action against the defendants, and therefore, the judgment will be reversed. All concur.